LARRY D. VAUGHT, Judge
Following a jury trial, the Union County Circuit Court entered a sentencing order convicting Jeremiah Green of first-degree murder, an enhancement for committing first-degree murder in the presence of a child, an enhancement for employing a firearm as a means of committing first-degree murder, and possession of a firearm by certain persons. Jeremiah was sentenced to imprisonment for forty years, ten years, fifteen years, and fifteen years, respectively, to run consecutively, for a total of eighty years. Jeremiah appeals the sentencing order, *576 challenging the sufficiency of the evidence supporting the first-degree-murder conviction and the possession-of-a-firearm conviction. We affirm.
On July 24, 2015, Jeremiah was charged by information with first-degree murder and possession of firearms by certain persons. The information further alleged that Jeremiah employed a firearm in committing first-degree murder and that he did so in the presence of a child. The information was later amended to allege that Jeremiah previously had been convicted of more than one felony, but less than four felonies; therefore, Jeremiah was charged as a habitual offender.
On November 3 and 4, 2016, a jury trial was conducted during which the State called numerous witnesses, and through their testimony it was established that shortly before 2:00 p.m. on July 5, 2015, at the Hillsboro Manor apartment complex in El Dorado, Arkansas, a male, identified as Cameron Johnson, was found dead lying face down in a large pool of blood between two vehicles in the parking lot of the complex.
Ten-year-old K'Naya Buggs testified that she lived at Hillsboro Manor. K'Naya had been popping firecrackers on July 5, 2015, when she saw Cameron talking to Shakorey Wade, K'Naya's mother's boyfriend. Cameron was standing in the parking lot near his vehicle and K'Naya's mother's vehicle. K'Naya asked Cameron to light her punk so she could continue to pop firecrackers. When it began to rain, K'Naya went into the doorway of her building. She said at that time Shakorey had gone inside and that Cameron was alone in the parking lot. She was leaning out of her door when she saw Jeremiah, whom she knew, "sneak" up behind Cameron and shoot him in the back. She testified that she saw Jeremiah holding a black gun but did not hear the shot because people were shooting firecrackers in the area. She further stated that she saw Cameron fall but did not think that he had been shot until she saw blood on the ground.
Lashena Stanley testified that she lived at Hillsboro Manor, and on the day in question, Keet Miller knocked on her door and asked her to come outside to check on Cameron. She did and found him lying on the ground in a pool of blood in the parking lot between two vehicles. Lashena testified that she witnessed Keet go through Cameron's pockets, enter Cameron's vehicle and remove a black backpack, and run away. Lashena testified that she did not see Jeremiah at this time; however, she stated that she had seen K'Naya playing outside before the shooting.
Sergeant Scott Harwell of the El Dorado Police Department testified that he found a gun-shell casing near where Cameron's body was found. Deborah Pumphrey, a forensic-firearm and tool-mark examiner with the Arkansas State Laboratory, testified that the gun-shell casing was fired from a nine-millimeter gun.
El Dorado Police Department criminal investigator Angela Means testified that Cameron was shot in the right side of his neck.[1] She said that the investigation led to Jeremiah as a suspect in Cameron's death. She was unable to locate him immediately, but Jeremiah's father, Richard Miller, brought him to the police department on the evening of July 6, 2015.
*577 Officer Means stated that she interviewed Jeremiah on two occasions and that Jeremiah's version of events continually changed. Jeremiah first said that on July 5, 2015, he had been at Hillsboro Manor visiting friends from 12:45 p.m. to about 1:30 p.m. Jeremiah said that his father picked him up around 1:30 p.m. and drove him to Little Rock where he stayed until the late afternoon of July 6, 2015. Officer Means called Jeremiah's father to confirm the alibi, and Jeremiah's father stated that it was not true. Officer Means interviewed Jeremiah again on July 8, 2015. Jeremiah admitted that the story he told about his father picking him up around 1:30 p.m. was not true. He said that he had been driving around with Briana Ford smoking marijuana when he received a call from "Ray" accusing him of killing Cameron. Miracle Rogers and Victoria Fikes testified that they saw Jeremiah at Hillsboro Manor on July 5, 2015.
Keet, Jeremiah's cousin, testified that he and Cameron were standing in the parking lot when Jeremiah walked toward them with a black gun sticking out of his right back pocket. Keet testified that Jeremiah ran by Keet, shot Cameron, and ran away. Keet admitted going through Cameron's pockets and opening Cameron's car but denied taking a backpack out of it. During cross-examination, Keet admitted that he initially did not tell the police what had happened and that he had lied to police when he said that he did not see the shooter's face. However, he stated that he was telling the truth at trial when he positively identified the shooter as Jeremiah. He also stated that he had recently been charged with capital murder in connection with Cameron's death and that his charges would be reduced if he testified against Jeremiah.
The State also presented the testimony of Shree Johnson and Greg Hayes, friends of Jeremiah's father, Richard. Shree and Greg testified that in the summer of 2016, they had a conversation with Richard about Jeremiah.[2] They said that Richard told them that the police were looking for the murder weapon; then, he pulled a black nine-millimeter gun out of his pocket, set it on the table, and said "it's right here." Richard testified, denying that the conversation took place.
After the State rested, Jeremiah moved for a directed verdict challenging the sufficiency of the evidence supporting the first-degree-murder and possession-of-a-firearm-by-certain-persons charges. The circuit court denied the motion. Thereafter, the defense presented the testimony of Jeremiah's grandmother, Thomasina Snowden, who stated that on July 5, 2015, Jeremiah was dropped off at her house between 1:00-1:30 p.m. As they walked into her home, she said that Jeremiah received a phone call and left.
Winston Steward also testified for the defense. Winston said that he lives at Hillsboro Manor and was there immediately prior to the shooting. He said that he saw Cameron and Shakorey standing on the sidewalk and that he saw K'Naya popping firecrackers. Winston stated that Shakorey followed him into the building. A few minutes later, Lashena told Winston that Cameron was lying in the parking lot dead. Winston called 911. Finally, Winston testified that he did not see Jeremiah in the area where the murder took place.
The defense recalled Sergeant Harwell, who testified that he interviewed Keet several *578 times. The sergeant denied coaching Keet's testimony. Sergeant Harwell explained the delay in arresting Keet. The officer testified that the police believed that they were looking for a "Keith Waller" and did not confirm that "Keith Waller" was not the suspect until October 8, 2016. Sergeant Harwell interviewed Keet on October 10 and 16, 2016, and the sergeant said that Keet was not truthful. The sergeant testified that Keet "came clean" the day before trial after he had been arrested for capital murder.[3]
After the defense rested, Jeremiah's counsel renewed the motion for directed verdict based on the same grounds, and the circuit court denied the motion. The jury found Jeremiah guilty of first-degree murder, committing the murder in the presence of a child, employing a firearm to commit the murder, and possession of a firearm by certain persons. As stated above, Jeremiah was sentenced to a total of eighty years' imprisonment. The circuit court entered a sentencing order on November 15, 2016, and this appeal followed.
On appeal, Jeremiah challenges the sufficiency of the evidence supporting the convictions for first-degree murder and possession of a firearm by certain persons. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. Crews v. State , 2017 Ark. App. 670, at 5, 536 S.W.3d 182, 186. When a defendant challenges the sufficiency of the evidence that led to a conviction, the evidence is viewed in the light most favorable to the State. Id. , 536 S.W.3d at 186. Only evidence supporting the verdict will be considered. Id. , 536 S.W.3d at 186.
Jeremiah first challenges the evidence supporting the first-degree-murder conviction. First-degree murder, defined in Arkansas Code Annotated section 5-10-102(a)(2) (Repl. 2013), provides that a person commits murder in the first degree if, with a purpose of causing the death of another person, the person causes the death of another person. A person acts purposely with respect to his or her conduct or a result of his or her conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result. Ark. Code Ann. § 5-2-202(1) (Repl. 2013). A criminal defendant's intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. Crews , 2017 Ark. App. 670, at 5, 536 S.W.3d at 186. Our supreme court has recognized that the intent necessary for first-degree murder may be inferred from the type of weapon used, from the manner of its use, and the nature, extent, and location of the wounds. Id. , 536 S.W.3d at 186.
Jeremiah contends that the State's case is circumstantial and that there are significant concerns about the credibility of the State's witnesses that cast doubt on the sufficiency of the evidence supporting his first-degree-murder conviction. First, he argues that K'Naya's testimony lacks credibility because she was only ten years old at the time; she testified that Jeremiah shot Cameron in the back between the shoulder blades when the medical evidence demonstrated that Cameron was shot in the right side of his neck; and K'Naya's mother's boyfriend (Shakorey) was also charged with the capital murder of Cameron and could have easily influenced K'Naya's testimony. Jeremiah also contends K'Naya's testimony is contrary to that of Winston's, an uninterested third party, who stated that he did not see Jeremiah *579 at the apartment complex before or after the shooting.
Next, Jeremiah challenges the credibility of Keet's testimony. Jeremiah argues that while Keet testified that he witnessed Jeremiah shoot Cameron, he did not relate this story to the police until after he had been charged with capital murder in connection with Cameron's death. Up to that point, Keet had reported to police that he did not see the face of the person who shot Cameron and had only heard from Shakorey that Jeremiah had shot Cameron. Keet also admitted that he was to receive reduced charges for his testimony against Jeremiah. He contends that Keet's testimony is contrary to that of Winston's, who stated that he did not see Jeremiah at the apartment complex before or after the shooting. According to Jeremiah, all of these things together, render Keet's testimony unreliable.
Finally, Jeremiah also calls into question the credibility of the testimony of Shree and Greg, both of whom testified that Jeremiah's father, Richard, in the summer of 2016, showed them a nine-millimeter black gun and told them it was the gun used in the murder of Cameron. Jeremiah contends that this evidence is not credible in light of Richard's complete denial that the conversation took place. Jeremiah also argues that the testimony of Shree and Greg lacks reliability because they could not remember exactly when their conversation with Richard took place and they did not have any proof that the gun Richard showed them was actually the murder weapon. Jeremiah also calls into question the fact that Shree and Greg were questioned and added as State witnesses only a week before trial.
Our review of the evidence viewed in the light most favorable to the State supports Jeremiah's conviction for first-degree murder. Contrary to Jeremiah's argument, there is direct evidence supporting the conviction. K'Naya, who testified that she knew both Jeremiah and Cameron, unequivocally stated that she witnessed Jeremiah walk up behind Cameron with a black gun and shoot him in the back and that he immediately fell to the ground where blood pooled around him. Other witnesses confirmed that K'Naya had been playing near the area where the shooting occurred. Keet also testified that Jeremiah shot Cameron with a black gun. The medical examiner testified that Cameron died from a gunshot wound on the right side of his neck. Police found a gun-shell casing near Cameron's body, and forensics confirmed that it was fired from a nine-millimeter gun. Finally, two witnesses testified that a year after the shooting, Jeremiah's father showed them a black gun (Greg said it looked like a nine-millimeter gun) and said that it was the murder weapon for which the police were looking. This is substantial evidence to support Jeremiah's conviction for first-degree murder. Any inconsistencies in the testimony of the witnesses go to the weight of the evidence. It is within the province of the trier of fact, not the reviewing court, to weigh the evidence and assess the credibility of witnesses. Gill v. State , 2010 Ark. App. 524, at 2, 376 S.W.3d 529, 531. Inconsistent testimony does not render proof insufficient as a matter of law. Id. , 376 S.W.3d at 531. Therefore, we affirm Jeremiah's first point on appeal.
Jeremiah's second point on appeal challenges the sufficiency of the evidence supporting his conviction for possession of a firearm by certain persons. He argues that the State failed to produce the murder weapon and that the testimony of K'Naya and Keet is questionable, as explained above.
Arkansas Code Annotated section 5-73-103(a)(1) (Repl. 2016) states, in relevant *580 part, that subject to certain limitations that are not applicable in this case, no person shall possess or own a firearm who has been convicted of a felony. "Possess" means to exercise actual dominion, control, or management over a tangible object. Ark. Code Ann. § 5-1-102(15) (Repl. 2013).
In this case, K'Naya testified that she saw Jeremiah shoot Cameron with a black gun. Keet testified that Jeremiah had a black gun in his pocket when he walked up to Cameron. Keet said that Jeremiah shot Cameron and then "tuck[ed] the gun" and ran away. Viewed in the light most favorable to the State, this is substantial evidence to support Jeremiah's conviction for possession of a firearm by certain persons. Again, any inconsistencies in the testimony of the witnesses go to the weight of the evidence. It is within the province of the trier of fact, not the reviewing court, to weigh the evidence and assess the credibility of witnesses. Gill , 2010 Ark. App. 524, at 2, 376 S.W.3d at 531. Inconsistent testimony does not render proof insufficient as a matter of law. Id. , 376 S.W.3d at 531. We affirm Jeremiah's second point on appeal.
Affirmed.
Virden and Gladwin, JJ., agree.

The medical examiner, Charles Kokes, testified that he performed the autopsy of Cameron. Dr. Kokes stated that Cameron had a gunshot entrance wound on the right side of his neck, which was the cause of his death. Dr. Kokes said that the manner of death was homicide.

The record reflects that Shree stated on direct examination that the conversation took place on July 23, 2016; however, on cross-examination, she stated it took place on June 23, 2016. Greg testified that the conversation took place in May, June, or July 2016.

Shakorey was also charged with capital murder in connection with Cameron's death.