
# ARKANSAS COURT OF APPEALS

DIVISION I

**No.** CR–16–848

| | | |
|---|---|---|
| | | **Opinion Delivered:** May 31, 2017 |
| RYAN O'NEAL ECHOLES | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTH DIVISION [NO. 60CR-15-606] |
| V. | | |
| STATE OF ARKANSAS | APPELLEE | HONORABLE BARRY A. SIMS, JUDGE |
| | | AFFIRMED |

## BART F. VIRDEN, Judge

Ryan O'Neal Echoles was convicted by a Pulaski County Circuit Court jury of fourth-degree sexual assault and was sentenced to thirty days in jail and fined $2500. On appeal he argues that the evidence supporting his conviction was insufficient. We affirm.

On June 1, 2016, there was a trial on the matter. K.P., who was fourteen at the time of the incident, testified that on the evening of April 27, 2014, she and her nine-year-old sister were visiting Echoles at his home. K.P. stated that while they were in the kitchen making milkshakes, Echoles asked her "Do you want to make some extra money?" and that she agreed, thinking he was going to ask her to wash dishes. K.P. testified that Echoles asked her if she would promise not to tell anyone, and she agreed. K.P. recounted that Echoles pushed her against the wall and began groping her buttocks and kissing her on her mouth. K.P. testified that she told Echoles to stop, that she was uncomfortable, and that she then returned to the living room. K.P. explained that she told her sister that it was time to leave.

K.P. testified that Echoles walked them home. K.P. did not tell her family about the assault that night, and she testified that the next day while she was at school she became upset. K.P. recounted that she told her teacher what had happened and that the teacher took her to the school guidance counselor, who called her mother.

K.P.'s teacher testified that the day she took K.P. to the school counselor, K.P. had seemed "shaky" and more introverted than usual, and that when she took K.P. out into the hall to ask her what had happened, K.P. became very upset, which was unusual for her. K.P.'s guidance counselor testified that the teacher brought K.P. to his office, where she told him what had happened. The guidance counselor testified that he immediately called K.P.'s mother.

K.P.'s mother testified at the trial that she first heard of the incident when the school counselor called her.  She recalled that on the evening of April 27, 2014, K.P. had not wanted to drink the milkshake she had brought home from Echoles's home, and it was unusual for her to refuse ice cream. K.P.'s mother testified that, after she spoke to the guidance counselor, she filed a police report at the North Little Rock Police Department. She explained that a couple of days after the incident, she and K.P. met and spoke with Detective Julie Eckart to give a recorded statement.

Detective Eckart testified that she had been assigned to K.P.'s case and that K.P.'s mother brought her into the office to make a report. Detective Eckart testified that K.P. seemed truthful and forthcoming. Eckart recounted that K.P. told her that Echoles asked her, "are you ready to make some extra money?" and that he pushed her up against the

wall, grabbed her, and started kissing her. Eckart testified that K.P. indicated to her that she pushed Echoles away from her when he touched her buttocks and told him no.

Officer Rodney Thomas of the North Little Rock Police Department testified that he conducted the follow-up interview regarding K.P.'s allegation of sexual assault. Detective Thomas testified that he took K.P.'s statement and that she told him Echoles had asked her if she was "ready to work for some money," and that he touched her buttocks and kissed her on the lips.

Echoles testified at his trial. He explained that K.P. and her sister had regularly visited his home—about three or four times a week. Echoles explained that he had been concerned for their mother, whom he had known for years, because she had been moody and withdrawn. Echoles testified that he often cooked for the kids, helped them with homework, and occasionally gave them money for doing chores because their mother had not been working. Echoles explained that on April 27, 2014, the girls had been at his house eating and watching television but had left his home early because there was a tornado in the area. Echoles asserted that, around that time, K.P.'s family members had been upset because he was planning on accepting a promotion and moving to Helena. He testified that the children often asked if he would marry their mother, though Echoles testified that he had not been in a relationship with K.P.'s mother. Echoles denied touching or kissing K.P.

Echoles's attorney moved for a directed verdict. He asserted that

> [s]pecifically, there is no evidence that my client unlawfully engaged in sexual contact for the purposes of gratification of the defendant. And there has been zero evidence put forward of anything regarding that there is a statement about any reaction by Mr. Echoles to the alleged incident.

There has been quite a few questions raised as to whether or not it happened, but as far as proof of any type of gratification there has been zero evidence put forward regarding that. There's been nothing regarding any kind of body movement by the defendant, any type of arousal by the defendant or any other type. Any evidence of gratification at this point.

The circuit court denied the motion for a directed verdict. Counsel renewed the motion for a directed verdict and restated his assertion that the State had not proved that Echoles "engaged in sexual conduct with an individual with the intent for sexual gratification, specifically under sexual contact." The circuit court denied the motion. The jury found Echoles guilty of fourth-degree sexual assault, sentenced him to thirty days in jail, and fined him $2500. Echoles filed a timely notice of appeal and a timely amended notice of appeal.

On appeal, Echoles asserts that the evidence is insufficient to support a conviction of fourth-degree sexual assault. Specifically, he argues that "the victim was not truthful in her statement and testimony alleging that appellant kissed and grabbed her butt. To assume that appellant committed this offense amounts to nothing more than speculation and conjecture." Echoles's argument on appeal is not well taken because it is different than the basis for the directed-verdict motion at the circuit court level. Below, Echoles argued only that the State had not proved the sexual-contact element of fourth degree sexual assault.[1] On appeal, he argues that the victim's testimony lacked credibility and that the jury would be forced to resort to speculation.

---

[1]A person commits sexual assault in the fourth degree if he is 20 years of age or older and engages in sexual contact with another person who is less than 16 years of age and who is not his spouse. Ark. Code Ann. § 5-14-127(a)(1)(B) (Repl. 2013).

It is well settled that an appellant must raise the issue and make an argument at trial in order to preserve it for appeal. *Raymond v. State*, 354 Ark. 157, 118 S.W.3d 567 (2003). All arguments made below but not raised on appeal are abandoned. *Abernathy v. State*, 2012 Ark. 59, 386 S.W.3d 477 (per curiam). A party is bound by the scope and nature of his directed-verdict motion and cannot change the grounds on appeal. *Plessy v. State*, 2012 Ark. App. 74, 388 S.W.3d 509.

We hold that by not raising to the circuit court the issue of the sufficiency of K.P.'s testimony to convict him of fourth-degree sexual assault Echoles abandoned the issue; however, even if the argument had been preserved for our review, we would affirm.

It is uncontroverted that on April 27, 2014, Echoles was twenty years of age or older, that K.P. was fourteen years old, and that the two were not married. K.P. testified that on April 27, 2014, Echoles pushed her against the pantry door, touched her buttocks, and kissed her on the mouth.

The jury may resolve questions of conflicting testimony and inconsistent evidence and may choose to believe the victim's account of the facts rather than the defendant's. *Van Winkle v. State*, 2014 Ark. App. 591, 445 S.W.3d 542. A sexual-assault victim's testimony may constitute substantial evidence to sustain a conviction for sexual assault. *Brown v. State*, 374 Ark. 341, 288 S.W.3d 226 (2008). The victim's testimony need not be corroborated, and the victim's testimony alone, describing the sexual contact, is enough for a conviction. *Colburn v. State*, 2010 Ark. App. 587. The credibility of witnesses is a matter for the jury's consideration. *Tryon v. State*, 371 Ark. 25, 263 S.W.3d 475 (2007). Even where the

defendant denies the allegations, the credibility and weight of the evidence are issues properly left to the fact-finder. *Estrada v. State*, 2011 Ark. 3, 376 S.W.3d 395.

The jury in this case chose to believe K.P. Her testimony, standing alone, constituted substantial evidence to sustain Echoles's conviction, and Echoles's assertion on appeal that K.P. is "lying" is not a ground for reversal.

Affirmed.

WHITEAKER and MURPHY, JJ., agree.

*Theodis N. Thompson, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rachel Kemp*, Ass't Att'y Gen., for appellee.