Dana was charged with committing aggravated assault on a family or household member as defined in Ark. Code Ann. § 5-26-306 (Repl. 2013), which states in pertinent part:
(a) A person commits aggravated assault on a family or household member if, under circumstances manifesting extreme indifference to the value of human life, the person purposely:
(1) Engages in conduct that creates a substantial danger of death or serious physical injury to a family or household member[.]
The alleged victim in this case was Dana's ex-husband Troy Daniels, and the incident occurred on the night of July 18, 2013. Dana and Troy divorced in 2005, but they continued to live in the same house, and Dana worked as an employee of Troy's tire business. Troy eventually fired Dana, which led to Dana having a confrontation with Troy at their home that night.
Troy testified that when Dana got home, she began to scream and yell at him about firing her and hiring a replacement. At some point, Troy went to bed, but about an hour later, he was awakened by getting "clobbered." He said that Dana busted his cheek with some object, but he did not know what the object was. Troy got out of bed and left the house, going toward a car in the yard. Troy described Dana as "crazy that night," yelling that he was "not going nowhere." Troy was trying to unlock the car door when he heard a gunshot that sounded like it was right by his ear. Troy ran down the road and heard a second shot fired. Two sheriff's deputies responded to a 911 call, and they found Troy about a half mile away from the house. Troy told them that he and Dana had been in an argument and that Dana had shot at him.
The deputies went back to the house where they saw broken glass and shell casings around the car. The deputies summoned Dana to come out of the house to talk, and Dana told them that it was Troy who had fired the gun at her.
*431 There was another person staying at the house that night, Dana's friend Vickie Patterson. Vickie testified that Dana came into the bedroom where she was sleeping, took a gun out, and told Vickie that she was "getting the gun" and "gonna kill him." Vickie got up and followed Dana out of the bedroom. Vickie saw Troy going outside and Dana running after him. She yelled at Dana, telling her not to shoot the gun, but Dana fired a round; a shell casing dropped inside the house. Vickie ran back to the bedroom and heard another shot fired. Vickie said that when Dana came back in the house, Dana asked her to tell the police that Troy had a gun on her (Dana). Vickie told Dana that she would not lie for her.
The deputies observed that a gunshot had shattered the car window and found a loaded nine-millimeter pistol behind the front door. The deputies also located multiple shell casings on the property, one of which was found on the house's tile floor within three feet of the pistol. Another witness, Lisa Downs, testified that Dana later admitted to her that she had to leave town because she had shot at Troy.
Dana's attorney made the following motion for directed verdict at the close of the State's evidence:
Your Honor, on behalf of the Defendant, we ask for a directed verdict on the basis of the state has failed to meet their evidential burden on this matter and has failed to establish sufficient evidence that this act occurred, or that my client, Ms. Daniels committed this act. Based on that fact, we're asking the court to enter a directed verdict in this matter.
The trial court denied the motion.
The defense put on witnesses to support the theory that Troy had a motive for getting Dana in trouble, which was that he wanted Dana to give him back substantial property she had obtained in their divorce. Other defense witnesses testified to the volatile relationship between Troy and Dana and his propensity to drink and be physically abusive. Dana did not testify. After the defense rested, at the close of all the evidence, defense counsel stated to the trial court:
I would reassert my motion for directed verdict. I think we have established that there is motive for the alleged victim in this case to fabricate these stories, and I think that his credibility has been totally impeached in this matter, and I would ask, again state that the state has failed to meet their burden of establishing sufficient facts for probable cause for this case to proceed to the jury.
The trial court denied the renewed directed-verdict motion.
The jury was subsequently instructed that the State was required to prove that Dana committed aggravated assault on a family or household member. The jury was informed that this crime occurs when a person purposely, under circumstances manifesting extreme indifference to the value of human life, engages in conduct that creates a substantial danger of death or serious physical injury to a family or household member. Following her conviction, Dana argues on appeal that the State failed to prove that she was the one who fired the gun that night and that Troy and Vickie were not credible witnesses. We cannot reach these arguments.
In order to preserve a challenge to the sufficiency of the evidence in a jury trial, a criminal defendant must make a motion for directed verdict at the close of the evidence offered by the prosecution and at the close of all the evidence. Ark. R. Crim. P. 33.1(a) (2016). A motion for directed verdict shall state the specific grounds therefor. Maxwell v. State , 373 Ark. 553, 559, 285 S.W.3d 195, 200 (2008).
*432 Without a circuit court ruling on a specific motion, there is nothing for this court to review. Id. Failure to abide by these procedural rules renders any question of the sufficiency of the evidence waived on appeal. Ark. R. Crim. P. 33.1(c) ; Bradley v. State , 2013 Ark. 58, 426 S.W.3d 363. An appellant must make a specific motion for a directed verdict that advises the trial court of the exact element of the crime that the State has failed to prove. Conley v. State , 2011 Ark. App. 597, 385 S.W.3d 875. Rule 33.1 is strictly construed. Pratt v. State , 359 Ark. 16, 194 S.W.3d 183 (2004).
A party cannot enlarge or change the grounds for an objection or motion on appeal but is bound by the scope and nature of the arguments made at trial. Kinsey, supra. A general motion does not satisfy the requirements of specificity mandated in Rule 33.1. Our appellate courts have been steadfast in our holdings that we will not address the merits of an appellant's insufficiency argument when the directed-verdict motion is not specific. Reynolds v. State , 2018 Ark. App. 8, 538 S.W.3d 223. Here, Dana's motion for directed verdict asserted only that the State failed to prove that "this act occurred" or that Dana "committed this act." This is too general to preserve the sufficiency-of-the-evidence issue for appellate review.
Even if the initial motion for directed verdict had been specific, Dana's renewed motion for directed verdict added a challenge to Troy's credibility, which was too late because it was required to be raised in the initial motion for directed verdict. The supreme court has held that a failure to make a motion for directed verdict with specificity regarding the sufficiency issue on appeal equates to the motion never having been made, further holding that this is so even in situations where the motion is specific at the close of all the evidence but not at the close of the State's case. Williamson v. State , 2009 Ark. 568, 350 S.W.3d 787. Dana's challenge on appeal to Vickie's credibility was never raised in either the initial motion or in the renewed motion for directed verdict. Dana's arguments on appeal about the witnesses' credibility are therefore not preserved for appellate review. See Radford v. State , 2018 Ark. App. 89, 538 S.W.3d 894.
Regardless of these procedural flaws, determinations as to the credibility of the witnesses and resolutions of any inconsistent evidence are left to be made by the jury. Starling v. State , 2016 Ark. 20, 480 S.W.3d 158. The jury is free to believe all or part of any witness's testimony. Marshall v. State , 2017 Ark. 347, 532 S.W.3d 563. Therefore, even if the sufficiency-of-the-evidence issues had been preserved, the trial court would not have erred in denying the motion for directed verdict.
Affirmed.
Vaught and Murphy, JJ., agree.