Cite as 2019 Ark. App. 384

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CR-18-836

DONNIE LEE HOLMES

APPELLANT

V.

STATE OF ARKANSAS

APPELLEE

Opinion Delivered September 18, 2019

APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTH DIVISION [NOS. 60CR-17-4171, 60CR-17-4358]

HONORABLE HERBERT WRIGHT, JUDGE

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

## BRANDON J. HARRISON, Judge

In July 2018, Donnie Lee Holmes was convicted (in case number 60CR-17-4171) of committing two counts of first-degree terroristic threatening against a former girlfriend and her fiancé after a bench trial. A separate cause (case number 60CR-17-4358) was also tried in the Pulaski County Circuit Court at the same time, and the court convicted Holmes of committing the crimes of possession of firearms by certain persons, aggravated assault on a family or household member, aggravated assault, and violation of a no-contact order. The court acquitted Holmes of one count of a terroristic act in case no. 60CR-17-4358. Holmes timely appealed his convictions.

For his first point, Holmes argues that the State failed to meet its burden of proof on the charge that he threatened his former girlfriend, Shakita Nowden. For his second point,

Holmes argues that the felon-in-possession-of-a-firearm conviction must also be reversed because the State did not present sufficient evidence to support the conviction.

I. *First-Degree Terroristic-Threatening Charge*

We first address Holmes's contention that the State did not prove its case on the charge that he committed terroristic threatening in the first degree against Nowden; therefore, the circuit court should have dismissed that charge. A motion to dismiss during a bench trial is a challenge to the sufficiency of the evidence. Ark. R. Crim. P. 33.1 (2018). In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. *Foster v. State*, 2015 Ark. App. 412, 467 S.W.3d 176. Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. And we must view the evidence in the light most favorable to the verdict. *Id.*

A person commits the offense of terroristic threatening in the first degree if, with the purpose of terrorizing another person, the person threatens to cause death or serious physical injury or substantial property damage to another person. Ark. Code Ann. § 5-13-301(a)(1)(A) (Supp. 2017).

Holmes moved to dismiss the terroristic-threatening charge at trial, contending that he did not threaten Nowden by making threatening telephone calls or sending threatening text messages. Here, he states that there is no evidence that he made specific threats toward Nowden and points out that the recorded "voicemail" presented in State's exhibit 1 is directed at Anthony Butler, Nowden's fiancé, not Nowden herself. State's exhibit 2 is a printout of the text messages exchanged between Holmes and Nowden.

2

A threat to kill someone will, quite obviously, sustain a conviction for first-degree terroristic threatening. *Armour v. State*, 2016 Ark. App. 612, at 4, 509 S.W.3d 668, 670. Assessing a witness's credibility is for the fact-finder, *Lowe v. State*, 2016 Ark. App. 389, 500 S.W.3d 176, and the circuit court performs this role during a bench trial. In doing so, it may accept or reject any part of a witness's testimony. *Id*.

We will review the evidence presented during the bench trial. Nowden testified that on 28 October 2017, Holmes tried to stop her and Butler with his car at an E-Z Mart on 12th Street in Little Rock. She said that after the E-Z Mart incident, Holmes called her on her cellular phone and sent her text messages. Nowden said that Holmes left her voicemails stating that he "was gonna kill me, kill my boyfriend, all type of stuff." The printed text messages indicate that there are (or were at one time) audio recordings embedded within the text messages that were exchanged between Holmes and Nowden. The embedded audio recordings were not, however, played or transcribed during the bench trial. It is not clear if these voicemails are the embedded audio messages sent via text messaging or not. In any event, Nowden said that she took seriously Holmes's threat to kill. In its turn, the circuit court credited Nowden's testimony that Holmes threatened to kill her and that she took that threat seriously. Based on the record before us, which included Nowden's testimony about what transpired, and the standard of review, we hold that the State sufficiently established the charge of terroristic threatening and affirm the conviction on that charge (case no. 60CR-17-4171).

II. *Felon-In-Possession-of-a-Firearm Charge*

Pursuant to Arkansas Code Annotated section 5–73–103(a)(1) (Repl. 2016), no person who has been convicted of a felony may lawfully possess or own a firearm. Holmes was charged with committing this crime. To obtain a conviction, the State had to prove that Holmes (1) possessed or owned a firearm and (2) was a felon. No one questioned that Holmes is a prior felon; he therefore focuses his argument on the element that he had to possess a firearm, which he says he did not do.

When moving the circuit court to dismiss this charge, Holmes's counsel argued,

> There was never a gun recovered. There was no evidence of a gun being used except for maybe the audible noise that might have been a gunshot. I just don't think they've met their burden, even looking at the light most favorable to the State[.]

The same argument has been raised on appeal.

What is the proof of record? First, the State never produced a firearm that Holmes purportedly possessed or constructively possessed. No witness testified that he or she actually saw Holmes holding, pointing, brandishing, or shooting a gun. No video or photographic evidence showed that Holmes possessed a gun at any time. Holmes was not arrested with a gun on his person. In other words, on the firearm charge, the State presented a circumstantial case. So we must ask whether the record contains enough evidence to convict Homes of constructively possessing a firearm.

To constructively possess a firearm means knowing it is present and having control over it. *Bradley v. State*, 2018 Ark. App. 586, at 5, 564 S.W.3d 569, 573 (noting that "constructive possession" has been defined as "knowledge of presence plus control"). Possession may be imputed when the contraband is found in a place that is immediately and

4

exclusively accessible to the accused and subject to his or her dominion and control, or to the joint dominion and control of the accused and another. *Id.* Control and knowledge can be inferred from the circumstances. *Nichols v. State*, 306 Ark. 417, 815 S.W.2d 382 (1991). An accused's suspicious behavior, coupled with physical proximity to the contraband, can indicate possession. *Pokatilov v. State*, 2017 Ark. 264, at 4, 526 S.W.3d 849, 854.

Here is the testimony relating to the firearm-possession charge. Nowden testified that on October 27, she and Anthony Butler drove first to Taco Bell and then to Burger King. While they were waiting in the drive-through line at Burger King, Nowden spotted Holmes, on foot, in the car's rear-view mirror.

PROSECUTOR: And when you got to that Burger King, did you see Mr. Holmes at some point?

NOWDEN: Yes.

PROSECUTOR: Okay. Can you explain that to the Court?

NOWDEN: We was just in line in the drive-through line waiting to get our food, and something just told me to watch my surroundings because we had already seen him at Taco Bell. And I just seen him running up, and I just hurried up and pulled off.

. . . .

NOWDEN: I mean, he was running, and he like shot in the air, and I just drove off.

PROSECUTOR: You said he shot up in the air?

NOWDEN: Yes.

PROSECUTOR: How many gunshots did you hear?

NOWDEN: Probably one.

. . . .

| | |
|---|---|
| PROSECUTOR: | Okay. So, when you saw Mr. Holmes in the rear view mirror, did you see him holding a weapon? |
| NOWDEN: | No. |
| PROSECUTOR: | Were there—You said that you heard, heard one gunshot. |
| NOWDEN: | Uh huh. |
| PROSECUTOR: | And then you think that he fired above the car? |
| NOWDEN: | Yes. I thought he shot at us. |
| PROSECUTOR: | Okay. |
| NOWDEN: | But, you know what I'm saying? |
| PROSECUTOR: | Were there any bullet holes in the car? |
| NOWDEN: | No. |
| PROSECUTOR: | You and Mr. Butler were not injured? |
| NOWDEN: | No. |
| PROSECUTOR: | Do you know of any shell casings that were found? |
| NOWDEN: | The police officer that was called to the scene, he said he was gonna go over there and see[.] |

No law-enforcement officer testified that one or more "shell casings" were found.

Anthony Butler took the stand, too; he said that Holmes had called him "about a hundred times." On this point, State's exhibit 1 was admitted without objection, and it is an electronic audio recording. Butler identified a voice on the recording as being Holmes's voice. The exhibit contains a statement by Holmes: "If you at them apartments, man,

mother★★★★rs being shot up" and "Somebody gonna die tonight." According to Butler, Holmes delivered the communication to him on October 28.

The prosecutor asked Butler what was going through his mind when he heard Holmes speak to him. Butler responded,

> But it was bullet holes in the wall, in the wall, so the casing was found and all that. They found the casings at both sites, and they the same gun casings, so I know it ain't two different people.

Butler also testified that he was with Nowden at Burger King, that Nowden had seen Holmes, and that "she pulled off when she seen him." Butler said he "got a glimpse of [Holmes's] jacket" and that he "just heard a gunshot." He then said that he went "back the next day and I found the same bullet casing that was outside the house. I had got, sent [the prosecutor] that video, too, of the bullet casing." The prosecutor replied, "I don't know about that, but okay."

While there is something to the State's position, we hold that it did not sufficiently prove that Holmes possessed a firearm as alleged. Holmes may have had a gun on October 27 or 28; maybe not. The record is too uncertain on this critical element for us to say that the proof is "forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture." Again, no witnesses said that they saw Holmes with a gun. A firearm was never recovered and presented as being one that Holmes had possessed. There was no video or photographic evidence that Holmes had possessed a gun. No identifiable damage related to a discharged firearm was presented. Both witnesses testified that they heard a gunshot, but that purported sound was not linked to a gun Holmes possessed. Butler's testimony did not align with any bullet casing recovered from around the apartment or other public

7

location like Burger King to a gun Holmes controlled. As we have said, no gun was recovered, and no shell casings were either. Holmes's most inculpatory statement related to a firearm was, "If you at them apartments, man, mother****rs being shot up," but it does not sufficiently establish that Holmes actually possessed or controlled a gun when Nowden, Butler, and Holmes were in the Burger King parking lot on October 27 or at Nowden's apartment on October 28. We therefore hold that the State did not present sufficient evidence on which a fact-finder could have convicted Holmes of being a felon in possession of a firearm as alleged.

### III. *Conclusion*

The State sufficiently established that Holmes committed the crime of first-degree terroristic threatening. Consequently, the sentencing order in case no. 60CR–17–4171 is wholly affirmed. But we must reverse and dismiss the felon-in-possession conviction, which is offense #2 in case no. 60CR–17–4358. Given this decision, we remand the case to the circuit court and direct it to enter a new sentencing order that accounts for the dismissal of offense #2 in case no. 60CR–17–4358, and in a manner otherwise consistent with this opinion.

Affirmed in part; reversed and remanded in part.

GRUBER, C.J., and MURPHY, J., agree.

*William R. Simpson, Jr.*, Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for appellee.