Cite as 2023 Ark. App. 309

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-22-258

| | | |
|---|---|---|
| CHRISTOPHER BURNS | | Opinion Delivered May 24, 2023 |
| | APPELLANT | APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT [NO. 30CR-21-23] |
| V. | | |
| | | HONORABLE CHRIS E WILLIAMS, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellant Christopher Burns appeals after he was convicted by a Hot Spring County Circuit Court jury of aggravated assault on a family or household member, terroristic threatening in the first degree, and domestic battering in the third degree. He was sentenced to serve an aggregate of seventy-two months' imprisonment. On appeal, appellant challenges the sufficiency of each of his convictions.[1] We affirm.

I. *Relevant Facts*

Appellant was arrested and charged with aggravated assault on a family or household member, a Class D felony, in violation of Arkansas Code Annotated section 5-26-306 (Supp.

---

[1]Because of briefing deficiencies, we previously ordered rebriefing on two other occasions. *See Burns v. State*, 2023 Ark. App. 34; *Burns v. State*, 2022 Ark. App. 472. We noted that counsel had failed to include a statement of the case that complied with Arkansas Supreme Court Rule 4-2(a)(6). Counsel has finally cured this deficiency.

2021); terroristic threatening in the first degree, a Class D felony, in violation of Arkansas Code Annotated section 5-13-301(a)(1) (Supp. 2021); and domestic battering in the third degree, a Class A misdemeanor, in violation of Arkansas Code Annotated section 5-26-305(a)(1) (Supp. 2021). These charges all stemmed from two attacks against appellant's wife, Katherine Burns. A jury trial was held on October 29, 2021.

At trial, the State introduced the testimony of both Katherine and Detective Susan Turner, who is employed by the Hot Spring County Sheriff's Office. Katherine testified that appellant is her husband and that they have two children together. In early January 2021, appellant became mad that Katherine could not find him a pair of socks. Appellant then choked Katherine into unconsciousness and, after she regained consciousness, proceeded to choke her again. During this attack, appellant stated he hated Katherine and would kill both Katherine and their son if she ever left him. Katherine testified that thereafter, appellant would not let her leave the house with both children at the same time.

Katherine testified that thirteen days after the first attack, appellant kicked her in the knee, causing her to fall to the floor. When Katherine refused to accept appellant's apology, he began punching her in the face and head. Katherine testified that she "blacked out" at one point, and that when she came to, appellant was still punching her in the head. Katherine stated that she thought something was "medically wrong" and pleaded for appellant to stop. After she kept screaming that there was "something medically wrong," appellant eventually stopped. Two days after the second attack, Katherine "escaped" and called law enforcement from a friend's house. Katherine admitted at trial that she was terrified of appellant on the day of the attack and that she was still terrified of him, stating, "He's going to kill me."

Detective Turner testified that she had taken two photographs depicting severe bruising on Katherine's jaw and chest two days after the second attack. Those pictures were admitted into evidence.

After the State rested, appellant moved for a directed verdict on each count. The circuit court denied each motion, and appellant then rested without introducing any further evidence. Appellant renewed his motion for directed verdict, which the circuit court also denied. The jury found appellant guilty of all three charges. He was sentenced to serve consecutive three-year terms of imprisonment on the aggravated-assault and terroristic-threatening convictions; he was also sentenced to serve one year of imprisonment on the domestic-battering conviction to run concurrently with the other sentences. This appeal followed.

II. *Standard of Review*

We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Armstrong v. State*, 2020 Ark. 309, 607 S.W.3d 491. In reviewing a sufficiency challenge, we assess the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id.* We will affirm a judgment of conviction if substantial evidence exists to support it. *Id.* Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.* Circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Collins v. State*, 2021 Ark. 35, 617 S.W.3d 701. Whether the evidence excludes every other hypothesis is left to the jury to decide. *Id.* Further, the credibility of witnesses is an issue for the jury, not the court; the trier of fact is free to believe all or part of any

witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Armstrong, supra.*

This court has noted that a criminal defendant's intent or state of mind is seldom apparent. *Benton v. State*, 2020 Ark. App. 223, 599 S.W.3d 353. One's intent or purpose, being a state of mind, can seldom be positively known to others, so it ordinarily cannot be shown by direct evidence but may be inferred from the facts and circumstances. *Id.* Because intent cannot be proved by direct evidence, the fact-finder is allowed to draw on common knowledge and experience to infer it from the circumstances. *Id.* Because of the difficulty in ascertaining a defendant's intent or state of mind, a presumption exists that a person intends the natural and probable consequences of his or her acts. *Id.*

### III. *Sufficiency of the Evidence to Support Aggravated-Assault-on-a-Family-or-Household-Member Conviction*

On appeal, appellant first argues that the circuit court erred in denying his directed-verdict motion for aggravated assault on a family or household member. He specifically argues that the State failed to prove that he "purposely impeded or prevented respiration or blood circulation by applying pressure on the chest, throat, or neck, or blocking the nose or mouth." He further argues that the State failed to prove that "he did so under circumstances manifesting extreme indifference to the value of human life." In support, appellant explains that the photographs "taken shortly after the incident" and admitted into evidence failed to show "signs of forceful choking" and argues that substantial evidence therefore does not support his conviction. We disagree.

In relevant part, "a person commits aggravated assault on a family or household member if, under circumstances manifesting extreme indifference to the value of human life, the person purposely . . . [i]mpedes or prevents the respiration of a family or household member or the circulation of a family or household member's blood by applying pressure on the chest, throat, or neck or by blocking the nose or mouth of the family or household member. Ark. Code Ann. § 5-26-306(a).

First, appellant's characterization that the photographs were taken "shortly" after the incident is inaccurate. In fact, Katherine testified that the photographs were not taken until approximately two weeks after the first attack, which is the attack that involved the choking. Katherine testified appellant had choked her to the point that she became unconscious. We have held that a victim's testimony that the accused choked him or her into unconsciousness is sufficient evidence of impeding respiration or blood flow and that choking someone to the point of unconsciousness is sufficient evidence of extreme indifference to the value of human life. *See Marek v. State*, 2021 Ark. App. 447, 635 S.W.3d 785; *Harris v. State*, 2018 Ark. App. 219, 547 S.W.3d 709.

Additionally, appellant argues under this point that the circuit court erred in denying his motion for directed verdict because it improperly commented on his choice not to testify when it noted in its ruling that the evidence was "unrebutted." We disagree. The circuit court noted that the evidence was unrebutted in denying appellant's motion for directed verdict. However, this comment was made after the State had rested, outside the presence of the jury, and before appellant had elected not to testify. Certainly, the circuit could not have been commenting on his choice not to testify before the choice was even made. Instead, it was an accurate description

5

of the testimony and evidence up to that point as to why it was denying appellant's motion for directed verdict. *See Richmond v. State*, 320 Ark. 566, 572–73, 899 S.W.2d 64, 67–68 (1995) (reaffirming that prosecutor's argument to jury that State's evidence was undisputed is not an improper comment on a defendant's failure to testify).

Thus, because the State presented substantial evidence from which the fact-finder could find aggravated assault on a family or household member, the circuit court did not err by denying his motion for a directed verdict, and we affirm this conviction.

IV. *Sufficiency of the Evidence to Support First-Degree Terroristic-Threatening Conviction*

Next, appellant argues that the circuit court erred in denying his directed-verdict motion for terroristic threatening in the first degree. More specifically, appellant argues that even though Katherine testified that appellant said he would kill her, there was no evidence that he acted with the purpose of terrorizing Katherine. He instead argues that he was the one in a "stressful situation" and that he "lash[ed] out without meaning a word." In support, he goes on to explain that he had "ample opportunity to kill [Katherine] if that is what he desired to do." We again disagree.

In relevant part, "[a] person commits the offense of terroristic threatening in the first degree if . . . [w]ith the purpose of terrorizing another person, the person threatens to cause death or serious physical injury or substantial property damage to another person[.]" Ark. Code Ann. § 5-13-301(a)(1). A person acts purposely with respect to his or her conduct or a result of his or her conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result. Ark. Code Ann. § 5-2-202(1) (Repl. 2013).

Here, Katherine testified that appellant had threatened to kill both her and her son. She further testified that not only was she terrified of appellant on the day of the attacks but also that she was still terrified of appellant at the time of trial, stating, "He's going to kill me." "A threat to kill someone will, quite obviously, sustain a conviction for first-degree terroristic threatening." *Holmes v. State*, 2019 Ark. App. 384, at 3, 586 S.W.3d 183, 185; *see also Williams v. State*, 2020 Ark. App. 560, 613 S.W.3d 759. This is particularly true here where appellant's threat was accompanied by an assault in which he rendered Katherine unconscious. Because the State presented substantial evidence from which the fact-finder could find terroristic threatening in the first degree, the circuit court did not err by denying his motion for a directed verdict, and we affirm this conviction.

V. *Sufficiency of the Evidence to Support Third-Degree Domestic-Battering Conviction*

Finally, appellant argues that the circuit court erred in denying his directed-verdict motion for domestic battering in the third degree. He specifically argues that "[a]lthough a person's purpose is seldom ascertained, it's clear here [that he] was *reacting to extreme stress*." (Emphasis added.)

However, we must first address the State's preservation argument. Rule 33.1 of the Arkansas Rules of Criminal Procedure provides the following in relevant part:

> (a) In a jury trial, if a motion for directed verdict is to be made, it shall be made at the close of the evidence offered by the prosecution and at the close of all of the evidence. A motion for directed verdict shall state the specific grounds therefor.
>
> . . . .
>
> (c) The failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required in subsections (a) and (b) above will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict or

7

judgment. A motion for directed verdict or for dismissal based on insufficiency of the evidence must specify the respect in which the evidence is deficient. A motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense. A renewal at the close of all of the evidence of a previous motion for directed verdict or for dismissal preserves the issue of insufficient evidence for appeal. If for any reason a motion or a renewed motion at the close of all of the evidence for directed verdict or for dismissal is not ruled upon, it is deemed denied for purposes of obtaining appellate review on the question of the sufficiency of the evidence.

It is well settled that Rule 33.1 is strictly construed. *Richardson v. State*, 2020 Ark. App. 25, 595 S.W.3d 1. A general motion does not satisfy the requirements of specificity mandated in Rule 33.1. *Daniels v. State*, 2018 Ark. App. 334, 551 S.W.3d 428. The reason underlying this rule is that, when specific grounds are stated and the proof is pinpointed, the circuit court can either grant the motion or allow the State to reopen its case and supply the missing proof. *Scott v. State*, 2015 Ark. App. 504, 471 S.W.3d 236. Our appellate courts have been steadfast in our holdings that we will not address the merits of an appellant's insufficiency argument when the directed-verdict motion is not specific. *Daniels*, *supra*. Further, a party cannot enlarge or change the grounds for an objection or motion on appeal but is bound by the scope and nature of the arguments made at trial. *Id.* All arguments made below but not raised on appeal are abandoned. *Echoles v. State*, 2017 Ark. App. 352, 524 S.W.3d 417.

In *Gillard v. State*, 372 Ark. 98, 270 S.W.3d 836 (2008), Gillard argued on appeal that his kidnapping and rape convictions were based on unreliable and uncorroborated DNA evidence. However, in his motion for directed verdict at trial, he argued that

> with regard to count one[, t]he State has failed to prove its burden that the Defendant, Levester Gillard, restrained without consent Lyndsey Johnson with the purpose of committing sexual intercourse or deviant sexual activity. Secondly, with regard to count two, the State has failed to prove that Levester Gillard engaged in sexual intercourse or sexual activity with Lyndsey Johnson by forcible compulsion.

*Gillard*, 372 Ark. at 101–02, 270 S.W.3d at 839. Our supreme court held that Gillard's arguments on appeal were not preserved because he did not specifically argue that his convictions were based on unreliable or uncorroborated DNA evidence but instead generally argued that the State was unable to prove the elements of the kidnapping and rape charges. *Id.*

Similarly, here, in appellant's motion for directed verdict regarding domestic battering, appellant's counsel simply stated, "On the charge of domestic battery in the third degree we move for a directed verdict of not guilty. There's been insufficient evidence presented to show that Christopher Burns caused physical injury to Mrs. Burns with the purpose of causing physical injury." Appellant failed to argue, as he does now on appeal, that "extreme stress" negated purposeful intent. Moreover, appellant's "extreme stress" argument is conclusory and without citation to any supporting authority. It is well settled that we will not consider an issue if the appellant has failed to cite any convincing legal authority in support of his argument. *Britton v. State*, 2014 Ark. 192, 433 S.W.3d 856; *Williams v. State*, 2009 Ark. 433, 373 S.W.3d 237. Further, the failure to develop a point legally or factually is reason enough to affirm the circuit court. *Barker v. State*, 2010 Ark. 354, 373 S.W.3d 865. For these multiple reasons, appellant's argument is simply not preserved, and we decline to address it.

Affirmed.

MURPHY and BROWN, JJ., agree.

*Gregory Crain*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Walker K. Hawkins*, Ass't Att'y Gen., for appellee.

9