Cite as 2023 Ark. App. 368

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CR-22-612

| | | |
|---|---|---|
| WILLIAM WEIR | | Opinion Delivered September 6, 2023 |
| | APPELLANT | |
| | | APPEAL FROM THE POPE COUNTY CIRCUIT COURT [NO. 58CR-19-794] |
| V. | | |
| | | HONORABLE JAMES DUNHAM, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

**CINDY GRACE THYER, Judge**

The State charged appellant William Weir with one count of rape after his then-twelve-year-old daughter, Minor Child 1 (MC1), alleged that he had digitally penetrated her on multiple occasions.[1] A Pope County jury found Weir guilty of rape and recommended a sentence of twenty-five years in the Arkansas Department of Correction, which the circuit court imposed in a sentencing order entered on March 18, 2022. Weir timely appealed, and he now challenges the sufficiency of the evidence supporting his rape conviction; in addition, he assigns error to three evidentiary rulings. We find no error and affirm.

---

[1]Weir was also charged with one count of second-degree sexual assault over allegations that he also digitally penetrated the vagina of MC1's friend; however, the jury acquitted him of this charge.

## I. *Background*

In May 2019, Weir took his family--consisting of MC1, her two brothers, her sister, and her stepmother, Michelle Weir--on a camping trip. The family slept close together, with Weir "spooning" MC1, which she described as "[her] back to his front." Weir would occasionally put his hands between MC1's thighs, telling her it was to keep his hands warm. One night during the camping trip, however, Weir put his hand inside MC1's pajama pants, rubbed her vagina, and then put two fingers inside her vagina.

After the camping trip, MC1 spent several days at a friend's house. When she came home, Weir told her that she needed to sleep and "cuddle" with him because she had been gone for such a long time. Weir and his wife were in the bed, as were MC1 and her older brother. During the night, Weir again digitally penetrated MC1's vagina despite her tossing and turning to try to get away from him. Weir eventually pinned her hands down and put his leg over her leg to restrain her and then continued to penetrate her with his fingers for most of the night. The next day, Weir punished MC1 for her "tossing and turning" the night before. Her punishment consisted of doing chores and, the next night, having to sleep in the same bed as Weir. That night, Weir assaulted MC1 again.

In June, the family went to visit Weir's sister, Janell Boyd, in Naperville, Illinois. Weir and his wife stayed for only a night or two, but the plan was for MC1 and her older brother to stay with their aunt for a couple of weeks. While they were there, MC1 confided to her aunt that Weir had abused her. Boyd then contacted her brother via Facebook Messenger and confronted him with the fact that she knew he had been touching MC1. Boyd told Weir

that she believed he was doing it only when he was drunk, but she knew he was doing it. Weir told her that he did not remember doing anything, but when Boyd reminded him about the camping trip, he told her "that would make sense that he did that on the camping trip because [MC1] acted really different with him afterwards, that she wasn't as affectionate and lovey with him anymore."

Weir then told Boyd that he wanted to apologize to MC1, and Boyd arranged for a second video chat. During this call, Weir apologized to MC1, but Boyd was not satisfied with the content or the sincerity of the apology. Boyd became angry and told him that MC1 had disclosed additional information about the frequency of the abuse, and she hung up.

Boyd then initiated yet another video chat, and this time she recorded the conversation. During that call, Weir told MC1, "I've got a lot of messed up emotions in all this myself, okay? And right now, I'm feeling like I need to defend my family, okay? And I'm sorry, [MC1]. It's not your fault. It's my fault." Boyd asked, "So you're not apologizing for what you did to her?" Weir replied, "I just did."

After that phone call ended, Boyd took MC1 to the Naperville Police Department to give a statement. The Naperville Police Department sent the report to the Russellville Police Department, which in turn contacted the Arkansas Child Abuse Hotline. The Crimes Against Children Division of the Arkansas State Police received the report from the hotline, and an arrest warrant was subsequently issued. While in jail following his arrest, Weir sent his wife an email in which he asked her to help with his bail and wrote, among other things, "[H]opefully they don't actually charge me with rape or I will get some serious time."

3

Prior to trial, Weir filed motions in limine to exclude both the recorded conversation between him and Boyd and the email he sent from jail. The court denied both motions, and the matter proceeded to a jury trial. As noted above, the jury convicted Weir of rape and sentenced him to twenty-five years in the Arkansas Department of Correction.

On appeal, Weir raises four arguments: (1) the evidence was insufficient to support his rape conviction; (2) the circuit court erred in admitting unauthenticated photographs of the campsite where the first rape occurred; (3) the court erred in denying Weir's motion to exclude the recorded conversation between him and Boyd; and (4) the court erred in denying his motion to exclude the jail email that he sent to his wife.

II. *Sufficiency of the Evidence*

In his first argument on appeal, Weir asserts that the circuit court erred in denying his motion for directed verdict. We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Armstrong v. State*, 2020 Ark. 309, 607 S.W.3d 491. In reviewing a sufficiency challenge, we assess the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id.* We will affirm a judgment of conviction if substantial evidence exists to support it. *Id.* Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.* The credibility of witnesses is an issue for the jury, not the court; the trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Burns v. State*, 2023 Ark. App. 309, 668 S.W.3d 566.

4

Rule 33.1(a) of the Arkansas Rules of Criminal Procedure provides that "[i]n a jury trial, if a motion for directed verdict is to be made, it shall be made at the close of the evidence offered by the prosecution and at the close of all of the evidence. A motion for directed verdict shall state the specific grounds therefor." Subsection (c) of the same rule provides that

> [t]he failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required in subsection[ ] (a) . . . above will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment. A motion for directed verdict or for dismissal based on insufficiency of the evidence must specify the respect in which the evidence is deficient. A motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense.

It is well settled that Rule 33.1 is strictly construed. *Richardson v. State*, 2020 Ark. App. 25, 595 S.W.3d 1. A general motion does not satisfy the requirements of specificity mandated in Rule 33.1. *Daniels v. State*, 2018 Ark. App. 334, 551 S.W.3d 428. The reason underlying this rule is that when specific grounds are stated and the proof is pinpointed, the circuit court can either grant the motion or allow the State to reopen its case and supply the missing proof. *Scott v. State*, 2015 Ark. App. 504, 471 S.W.3d 236. Our appellate courts have been steadfast in holding that we will not address the merits of an appellant's insufficiency argument when the directed-verdict motion is not specific. *Daniels*, *supra*. Further, a party cannot enlarge or change the grounds for an objection or motion on appeal but is bound by the scope and nature of the arguments made at trial. *Burns*, *supra*.

At the close of the State's case, Weir moved for a directed verdict on the rape charge as follows:

Your Honor, the defense moves for a motion of a directed verdict because the evidence in all the inferences from the evidence considered in the light most favorable to the prosecution does not prove the prosecution's case beyond a reasonable doubt.

On the . . . charge of rape, Your Honor, the State has failed to prove beyond a reasonable doubt that William Warren Weir committed rape by engaging in sexual intercourse or deviant sexual activity with another person, namely MC1. And that MC1 was less than 14 years of age at the time the alleged offense occurred.

On appeal, Weir argues that the circuit court should have granted his motion for directed verdict because MC1's testimony was "so clearly unbelievable that reasonable minds could not differ about it." Weir's directed-verdict motion, however, did not challenge the victim's credibility but was instead a general motion that failed to satisfy Rule 33.1's requirements of specificity. As such, the specific arguments he presents to this court are not preserved for review.

Moreover, even if Weir's directed-verdict motion had been specific enough to preserve the arguments he now presents to us, we would still not reach the merits of his argument because he failed to renew his motion at the close of all the evidence. At the conclusion of the trial, Weir asked if he should renew his motion before or after the jury was instructed. The court replied that it was "okay to do it after the jury's retired." After the jury left the courtroom to begin deliberations, counsel renewed his motion, stating, "I don't think the State proved beyond reasonable doubt any of the . . . allegations as prior stated, Judge." The court again denied the motion.

Rule 33.1 provides that when there has been a trial by jury, a renewal of a previous motion for a directed verdict at the close of all the evidence is required to preserve the issue

of insufficient evidence for appeal. This renewal is more than a matter of mere form: it goes to the substance of the evidence arrayed against the criminal defendant. *Thomas v. State*, 315 Ark. 504, 868 S.W.2d 483 (1994). After the jury has been charged, however, is too late to consider a motion to direct a verdict. *Rankin v. State*, 329 Ark. 379, 948 S.W.2d 397 (1997).

Our supreme court has held that a circuit court's decision to consider and then deny a motion for a directed verdict made after the jury had been instructed, but before closing arguments, did not comply with the rule requiring that the motion be renewed at the close of the case and was therefore "too late." *Robinson v. State*, 348 Ark. 280, 285, 72 S.W.3d 827, 830 (2002) (citing *Claiborne v. State*, 319 Ark. 602, 603, 892 S.W.2d 511, 512 (1995)). Here, because Weir's renewal of his directed-verdict motion was not made until after the jury had been instructed, closing arguments had concluded, and the jury had retired to deliberate, it was too late. His sufficiency argument was not preserved.[2]

---

[2]We would also note that even if Weir's sufficiency argument were preserved, it would not be not well taken. A person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person who is less than fourteen years of age. Ark. Code Ann. § 5-14-103(a)(3)(A) (Supp. 2023). "Deviate sexual activity" means any act of sexual gratification involving the penetration, however slight, of the labia majora of a person by any body member or foreign instrument manipulated by another person." Ark. Code Ann. § 5-14-101(1)(B) (Supp. 2023). A rape victim's uncorroborated testimony describing penetration may constitute substantial evidence to sustain a conviction of rape, even when the victim is a child. *Hartley v. State*, 2022 Ark. 197, at 5, 654 S.W.3d 802, 806.

At trial, MC1 testified that Weir digitally penetrated her vagina on at least three separate occasions. On appeal, Weir acknowledges that a rape victim's testimony, standing alone, is sufficient to support a conviction. He argues, however, that MC1's testimony was not credible and that she had motive to fabricate the allegations against him. This court, however, does not weigh the evidence presented at trial or assess witness credibility. *Turner v. State*, 2018 Ark. App. 5, 538 S.W.3d 227. It is the jury's role as the finder of fact to resolve

### III. *Admissibility of Photographs*

Weir's second argument on appeal concerns the introduction of photographic evidence. At trial, the State called Detective Steven Barker to testify about, among other matters, material recovered from Weir's cell phone. During the course of Barker's testimony, the State moved to introduce a set of five photographs that had been taken on Weir's phone during the May 2019 camping trip. In response, Weir's counsel expressly stated that "we have no objection over those pictures." The court then admitted the photos into evidence.

Sometime after the photos were admitted into evidence, the State presented an electronic report from a data-extraction program called Cellebrite that purported to show the photographs had been taken on May 15. Weir objected to the report's conclusion that the photos were taken on May 15, arguing that he had "never seen [the report] in my life." The court clarified that Weir was objecting to the report's identification of the date. Weir agreed and added that Barker was "not the right person to testify that those pictures were taken on that date." The court then specifically overruled Weir's objection "to the use of the Cellebrite information from the defendant's phone to identify the date" the photos were taken.

On appeal, Weir argues that the circuit court erred in admitting the "unauthenticated photographs" into evidence in violation of Arkansas Rule of Evidence 901. He complains

---

questions of inconsistent evidence and conflicting testimony, and the jury was free to believe the State's version of the facts over the defendant's account. *McLemore v. State*, 2022 Ark. App. 512, 657 S.W.3d 190. Accordingly, as Weir's sufficiency argument challenges only MC1's credibility, it would be without merit even if it had been preserved.

that Detective Barker did not perform the Cellebrite extraction from the phone and thus did not have the "knowledge of whether the evidence presented at trial was what it purported to be." Accordingly, he contends that Detective Barker was not the proper witness through whom to introduce the photographs and that the circuit court thus erred in admitting unauthenticated photos.

The photographs, however, were introduced without objection to their authentication. To preserve an issue for appeal, a defendant must object at the first opportunity. *Holt v. State*, 2011 Ark. 391, 384 S.W.3d 498. A party who does not object to the introduction of evidence at the first opportunity waives such argument on appeal. *Id.* Weir's failure to object to the introduction of the photographs at the first instance precludes any argument regarding their admissibility on appeal.

IV. *Admissibility of Recorded Statement*

In his next argument on appeal, Weir challenges the introduction of the recorded conversation that he and Janell Boyd had while MC1 was in Naperville. In his motion in limine, Weir argued, among other things, that the evidence was not relevant as defined by Arkansas Rule of Evidence 401 and that any probative value would be outweighed by the danger or unfair prejudice under Rule 403. At the hearing on the motion in limine, Weir argued that the recorded conversation was problematic because "you only hear the end of the conversation," which would preclude a listener from understanding the entire context of the conversation. The court determined that if it was "a conversation between the witness and the defendant, and the defendant is making a statement that is relevant to the allegation

in the case, then it would seem to be admissible." Accordingly, the court ruled that the "statement of the defendant related to the allegations in the case" would be admissible and, as such, denied Weir's motion in limine to prevent the State from introducing the recorded statement.

Arkansas Rule of Evidence 403 provides in pertinent part that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" The balancing mandated by Rule 403 is a matter left to a circuit court's sound discretion; thus, we will not reverse the court's ruling absent a showing of manifest abuse. *Phillips v. State*, 344 Ark. 453, 459, 40 S.W.3d 778, 782 (2001) (citing *Mixon v. State*, 330 Ark. 171, 954 S.W.2d 214 (1997)).

On appeal, Weir argues that the circuit court abused its discretion in admitting the recorded statement because it "unfairly prejudiced the defendant and misled the jury." He complains that the State "repeatedly argued that the recorded conversation amounted to Weir confessing to digitally penetrating MC1 because Weir said "I'm sorry, MC1. Is it not your fault. It is my fault." He claims, however, that his statement was not a confession to raping his daughter but was instead an apology for making MC1 want to move away from Russellville. Weir asserts that the jury would have better understood the context of the recorded conversation if the previous conversations had also been recorded and presented to the jury. Because they were not, he argues, the jury was misled, and the circuit court erred in allowing the recorded conversation to be introduced. We disagree.

In *Phillips*, *supra*, a capital-murder case, the State was permitted to introduce a letter written by the defendant to a friend in which he wrote, "I know I did murder that man." On appeal, Phillips argued that the letter, in which he also implored the friend to testify truthfully, was open to multiple interpretations and thus should not have been admitted because it could have confused the jury. The supreme court rejected his argument, writing as follows:

> An admission of guilt by the accused is relevant evidence of highly probative value. Although the letter is certainly open to more than one interpretation, as argued by Mr. Phillips, the fact that the letter could have a negative impact on him is insufficient to exclude it under Rule 403. In order for the letter to be excluded under Rule 403's balancing test, the danger of unfair prejudice must substantially outweigh the probative value of the letter. Ark. R. Evid. 403. Counsel was free to argue an alternative interpretation of the letter to the jury in order to mitigate any prejudice; however, *Rule 403 does not require the court to suppress evidence of guilt simply because it is open to interpretation*. Whether the letter was in fact a confession was an issue for the jury to decide. We conclude that the trial court did not abuse its discretion when it declined to exclude the letter under Rule 403.

*Phillips*, 344 Ark. at 460–61, 40 S.W.3d at 783 (emphasis added).

In the instant case, Weir argues that the jury was misled by the recorded conversation into believing that his apology was tantamount to a confession that he had raped his daughter. He testified at trial and argued during his closing argument, however, that when he told MC1 he was sorry, he was not confessing to touching her but was instead apologizing for making her feel like she wanted to move away. The jury thus was presented with Weir's interpretation of the apology in the recorded conversation and simply rejected his premise. As in *Phillips*, whether the recorded conversation was a confession was an issue for the jury

to decide, and the circuit court did not abuse its discretion in allowing the recording of the conversation to come into evidence.

## V. *Jail Email*

Finally, Weir argues that the circuit court abused its discretion in denying his motion in limine to exclude an email that he sent his wife from jail shortly after his arrest. That email, in its entirety, reads as follows:

> good morning momma, youll probably need help with the bond, if possible please get me out on monday. i need to spend as much time with you n the kiddos as i can. hopefully they dont actually charge me with rape or i will get some serious time, hopefully i get to see ya tomorrow so i can wreck that booty hole. ha. from the way ppl talk my bond will be anywhere between 10k and 25k. thatd be 1 k to 2.5k ya gotta come up with so yea save as much as ya can. who all have ya talked too? whats fb saying about me? not that they know the truth or anything relevant, social media is so toxic but oh well, what all have you put on my books or where did you put it? i cant find any money anywhere in this system, it does show i have 350 credits now so ha imma blow up your phone, not really, love ya

Prior to trial, Weir filed a motion in limine to prevent the introduction of this email because it was irrelevant and unduly prejudicial under Arkansas Rules of Evidence 401 and 403. At a pretrial hearing, Weir argued that the email "had nothing to do with this case, so it doesn't show it whether he's guilty or not." The State responded that Weir's statement, "hopefully they don't actually charge me with rape or I will get some serious time," was indicative of his consciousness of guilt. The court, reasoning that it "sounds a lot like an admission" but agreeing that it was open to interpretation, denied the motion in limine because it was "a determination for the jury to make."

On appeal, Weir argues that the "introduction of the email . . . unfairly prejudiced [him] because, similar to the recorded phone conversation with Janell Boyd, it took his language out of context." He maintains that he was not confessing to inappropriately touching his daughter, but rather that his language was merely "intended to reflect concern about the potential range of punishment this type of charge carries." As with his argument in the preceding point, however, "Rule 403 does not require the court to suppress evidence of guilt simply because it is open to interpretation. Whether the [email] was in fact a confession was an issue for the jury to decide." *Phillips*, 344 Ark. at 461, 40 S.W.3d at 783. We therefore hold that it was not an abuse of discretion for the court to allow the State to introduce the email.

Affirmed.

HARRISON, C.J., and MURPHY, J., agree.

*James Law Firm*, by: *William O. "Bill" James, Jr.*, and *Drew Curtis*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Christopher R. Warthen*, Ass't Att'y Gen., for appellee.