Shirley Irene BUSH *v.* STATE of Arkansas

CR 76-232                               550 S.W. 2d 175

Opinion delivered May 16, 1977
(In Banc)

*Gene Worsham,* for appellant.

*Bill Clinton,* Atty. Gen., by: *Joseph H. Purvis,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. The appellant was convicted of capital murder committed in the perpetration of robbery and was sentenced to life imprisonment without parole. Her principal points for reversal have to do with the sufficiency of the evidence to support a finding of an intent to commit robbery and with the trial judge's communications with the jurors during their deliberations.

Upon the first point there was an issue of fact for the jury. Mrs. Bush and her husband, in hitch-hiking back to Arkansas after a trip to Florida, were picked up by the decedent, Billy John Jones, in his truck and carried from Columbia, Louisiana, to Conway, Arkansas. At a Conway truck stop Bush left his wife and Jones in the truck for a short while. According to the confession of Mrs. Bush (the only eyewitness), Jones climbed into the sleeper, took off his clothes, and tried to pull Mrs. Bush up into the sleeper, assertedly with the intention of raping her. Mrs. Bush had a knife, with which she fatally stabbed Jones, principally in his neck. Upon Bush's return the couple at first concealed the crime by driving the truck, with Jones's body in it, to an isolated spot and abandoning it. Mrs. Bush said in her confession that during that trip she was wearing some of Jones's clothes and took $40 from a wallet she found in one of the pockets. A few days later Bush reported the crime and the location of the truck to the police.

It is argued that Mrs. Bush committed the homicide in defending herself and not in the perpetration of robbery. The jury, however, was not required to accept her account, especially as she was an interested participant. Furthermore, Jones's widow testified that he had more than $300 in cash when he left home two days before his death. Thus there was substantial evidence to support a finding that robbery was the motive for the crime.

The judgment must be reversed, however, as a result of the circuit judge's communications with the jury, even though the opposing attorneys were also at fault.

The jury, after several hours of deliberation, reported that they were hopelessly divided. The lawyers in the case, thinking a mistrial to be imminent, discussed the possibility of a negotiated plea of guilty. The prosecutor insisted upon a 21-year sentence, but the defense was unwilling to recommend more than 12 years. The attorneys, in a novel but misguided effort to obtain helpful information, agreed that the judge might confer with the jury to determine two things only: their numerical division and the degree of homicide upon which they were divided.

Judge Roberts rashly agreed to counsel's joint request and conferred privately with the jury in the courtroom, after the accused, the attorneys, and everyone else had been excused. After a substantial length of time Judge Roberts sent the jury back to the jury room, reported to counsel the information that had been sought, and explained that, upon an inquiry by a juror, he had discussed with the jury the governor's possible pardoning power with respect to a life sentence without parole. He said he had told the jury that the legislature could not take away the governor's constitutional pardoning power. The judge also mentioned that one or two jurors had been confused, but he thought they were straightened out. Within five minutes the jury, after having been hopelessly deadlocked, returned a verdict of guilty and fixed the sentence at life imprisonment without parole.

The exact details of what happened are not known, for none of the discussions were recorded by the court reporter, and at the hearing upon the defendant's motion for a new trial, Judge Roberts refused to make any statement, sworn or unsworn, about his discussion with the jury. Of course the jurors were not competent witnesses; so the accused was left with no means of discovering whether prejudicial error occurred.

The motion for a new trial should unquestionably have been granted. It is immaterial that defense counsel did not at once object to the judge's having discussed the matter of possible parole with the jury, for that was the judge's own error. *Bell* v. *State,* 223 Ark. 304, 265 S.W. 2d 709 (1954). That the discussion took place at all must be regarded as

prejudicial error, for, despite some inconsistencies in our earlier opinions, we made it unmistakably plain in *Andrews* v. *State*, 251 Ark. 279, 472 S.W. 2d 86 (1971), that jurors are not concerned with the parole system and consequently should not be given even completely accurate information upon that subject. Here it is a reasonable inference that the jurors would not have returned their actual verdict had they not been given Judge Roberts's explanation of the governor's pardoning power.

The appellant also complains that the instructions to the jury were misleading and confusing. That is true, apparently as a result of the court's having interposed oral comments in the course of reading a variety of written instructions. Nothing would be accomplished by an analysis of the court's charge to the jury; we can only suggest that a complete set of instructions be prepared by counsel before the case is retried. Finally, the availability to defense counsel of the witness MacKenzie's pretrial statement is moot, counsel eventually having seen it.

Reversed.