Jack Wayne TEAGUE *v.* STATE of Arkansas

CR 96-1500 946 S.W.2d 670

Supreme Court of Arkansas
Opinion delivered June 2, 1997

*Robert S. Blatt* and *Timothy C. Sharum*, for appellant.

*Winston Bryant*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Jack Wayne Teague appeals the judgment of the Crawford County Circuit Court convicting him of two counts of aggravated assault and sentencing him to serve consecutive terms of six years' imprisonment on each count. This appeal presents issues involving our interpretation of constitutional and statutory provisions, thus our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(1) and (17) (as amended by *per curiam* July 15, 1996). Appellant raises three points on appeal, two of which address allegations of error in the sentencing phase of the trial and one which pertains to the guilt phase. We find no error and affirm.

### Allegations of Error Pertaining to Guilt

Appellant was charged with the aggravated assault of Rita Teague, Appellant's ex-wife, and Donald Stout, Teague's fiancé. Appellant argues that it was error for the trial court to allow the State to present the testimony of Bonnie Coleman, Teague's mother, concerning Appellant's threats to Teague during the time he and Teague were separated, but before they were divorced. Appellant objected below on the ground that the evidence was inadmissible because it was too remote in time from the date of the crimes and that it was unclear from the witness's testimony when the threats actually occurred. The prosecutor responded by making a stipulation that there was a period of five and one-half

months between the couple's separation and divorce. Appellant maintained that the evidence was still too remote, but the trial court overruled the objection.

▪ Evidence may be relevant even though it is somewhat remote in time from the occurrence of the crime. *Greene v. State*, 317 Ark. 350, 878 S.W.2d 384 (1994) (citing *Hubbard v. State*, 306 Ark. 153, 812 S.W.2d 107 (1991)). A trial court is accorded wide discretion in evidentiary rulings and we will not reverse such rulings absent a manifest abuse of discretion. *Misskelley v. State*, 323 Ark. 449, 915 S.W.2d 702, *cert. denied*, 117 S. Ct. 246 (1996).

▪ Appellant's charges of aggravated assault stemmed from his actions of firing a gun at both victims a mere eighteen days after Teague had obtained a divorce from Appellant. The testimony presented by Teague's mother established that she had frequent contact with Appellant after he and Teague had separated and that Appellant made statements "all the time" that he was going to kill Teague. Teague's mother also testified about one particular incident during the separation when Appellant had stated that he was going to hang Teague with a rope from a tree and "gut her like a deer." This testimony was clearly relevant to Appellant's intent and state of mind at the time of the offenses and was not so remote in time to render it irrelevant to the crimes with which he was charged. Appellant has thus failed to demonstrate that the trial court abused its discretion in admitting the testimony.

▪ Appellant additionally argues that the evidence was inadmissible because the prosecutor failed to lay a proper foundation as to what point in time the alleged threats were made and that the testimony should have been excluded pursuant to A.R.E. Rule 403 because it was unfairly prejudicial. We do not review these issues, as they are raised for the first time on appeal. *Bridges v. State*, 327 Ark. 392, 938 S.W.2d 561 (1997).

### Allegations of Errors in Sentencing

As to the first allegation of error in sentencing, Appellant argues that the trial court erred in instructing the jury on parole and transfer eligibility in accordance with AMI Crim. 2d 9401.

Appellant argues that parole is a matter for the executive branch and that instructing the jury on parole eligibility, as provided in Ark. Code Ann. § 16-97-103(1) (Supp. 1995), violates the doctrine of separation of powers expressed in Article 4, §§ 1 and 2, of the Arkansas Constitution.

The State contends that Appellant's constitutional challenge is without merit because neither section 16-97-103(1) nor AMI Crim. 2d 9401 infringes upon the executive's authority to determine which eligible inmates are actually paroled. It is well established that statutes are presumed to be constitutional and the burden of proving otherwise rests with the party challenging the statute. *Williams v. State*, 325 Ark. 432, 930 S.W.2d 297 (1996). All doubts are resolved in favor of constitutionality. *Allen v. State*, 327 Ark. 350, 939 S.W.2d 270 (1997).

Recently, in two separate cases, this court had the opportunity to review similar arguments concerning a trial court's ability to instruct juries as to the law of parole and transfer eligibility. *See Spann v. State*, 328 Ark. 509, 944 S.W.2d 537 (1997); *Travis v. State*, 328 Ark. 442, 944 S.W.2d 96 (1997). We held in both cases that since the enactment of our criminal code in 1975, this court has repeatedly recognized that sentencing is controlled by statute. We also concluded that in 1993, with the passage of Act 535, the General Assembly made substantial changes in the procedures governing jury trials in criminal cases, thereby providing for separate consideration of a defendant's guilt and punishment. In neither of those cases, however, was the issue raised that section 16-97-103(1), which was included in Act 535, was unconstitutional because it violated the doctrine of separation of powers.

Article 4, § 1, of our constitution provides that the powers of the government of this State are divided among the legislative, executive, and judicial departments. Article 4, § 2, provides: "No person, or collection of persons, being one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted." (Emphasis added.) Section 16-97-103 provides in pertinent part:

> Evidence relevant to sentencing by either the court or a jury may include, but is not limited to, the following, provided no

evidence shall be construed under this section as overriding the rape shield statute, § 16-42-101:

> (1) The law applicable to parole, meritorious good time, or transfer[.]

Appellant contends that section 16-97-103(1) violates Article 4 because it is a directive from the legislature to the judiciary involving powers reserved to the executive. Appellant contends further that the possibility of a defendant's parole is too speculative a proposition for the jury to properly consider. In support of his argument, Appellant relies on this court's language in *Andrews v. State*, 251 Ark. 279, 472 S.W.2d 86 (1971), that the subject of parole eligibility "is entirely alien to a judicial proceeding since it is handled entirely by another department of government, the executive." *Id.* at 289, 472 S.W.2d at 92.

The State directs our attention to the United States Supreme Court's decision of *California v. Ramos*, 463 U.S. 992 (1983), in which the Court upheld California's practice of informing juries that a sentence of life imprisonment without the possibility of parole may be commuted by the governor to a sentence that includes the possibility of parole. The Court reasoned that the instruction given was a correct statement of the law and that such an instruction "does not preclude individualized sentencing determinations or consideration of mitigating factors, nor does it impermissibly inject an element too speculative for the jury's deliberation." *Id.* at 1013. The Court held further that "the wisdom of the decision to permit juror consideration of possible commutation is best left to the States." *Id.* at 1014. The State argues that the citizens of this State, through their elected legislators, have indicated their desire for truth in the sentencing of criminal defendants with the enactment of section 16-97-103(1). We agree.

This court's decision in *Andrews*, 251 Ark. 279, 472 S.W.2d 86, does not warrant our declaration that section 16-97-103(1) is unconstitutionally violative of the doctrine of separation of powers. In the first instance, the decision in *Andrews* is of little or no precedential value, as that case was decided before the enactment of this State's criminal code in 1975 and before the passage of Act

535 in 1993, which provided for bifurcated trials in criminal cases as well as the introduction of evidence related to parole and transfer eligibility during the sentencing phase of those trials.

In the second instance, the public policy of this State has changed considerably from the time *Andrews* was decided to reflect the General Assembly's desire for truth in sentencing. In addition to our constitution, the public policy of this State is found in its legislation. *Chatelain v. Kelley*, 322 Ark. 517, 910 S.W.2d 215 (1975). It is within the power of the legislature, rather than the courts, to declare public policy. *Nabholz Constr. Corp. v. Graham*, 319 Ark. 396, 892 S.W.2d 456 (1995). With the passage of Act 535 the legislature has declared the public's desire for truth in sentencing.

In short, we are not persuaded by Appellant's argument that the act of instructing the jury as to the powers possessed by the legislative and executive departments violates the doctrine of separation of powers. We are not convinced that it is error to inform the jury as to the correct state of the law regarding parole and transfer eligibility. Article 4, § 2, prohibits any one department of government from *exercising* any powers belonging to another department. The fact that the jury may take into consideration when a person convicted of a certain class of felony is *eligible* for parole or transfer is in no way a usurpation of the executive department's power and authority to decide when an individual defendant should be released. We thus conclude that neither section 16-97-103(1) nor AMI Crim. 2d 9401 is violative of the constitutional doctrine of separation of powers provided in Article 4, §§ 1 and 2, and we affirm the ruling of the trial court.

For his next allegation of sentencing error, Appellant argues that the trial court erred in running the sentences on each of the two charges consecutively because the court failed to use its discretion pursuant to Ark. Code Ann. § 5-4-403 (Repl. 1993). The State argues that Appellant failed to make this specific objection below and is thus precluded from arguing it on appeal. Although we are not persuaded by the State's procedural argument, we nonetheless find no error with the trial court's decision to run the sentences consecutively.

During argument in the sentencing phase of Appellant's trial, the prosecutor asked the jury to note on the verdict forms whether it was the jury's desire that the sentences run concurrently or consecutively. The jurors did as the prosecutor requested, indicating on the verdict forms that they wanted the sentences to run consecutively. The trial court then sentenced Appellant accordingly:

> Alright, in keeping with the verdict of the jury, Mr. Teague, this Court hereby sentences you, in the case of Donald Stout, sentences you to 6 years in the Arkansas Department of Corrections [sic]. And, in the Rita Teague case, 6 years in the Arkansas Department of Corrections [sic]. Those sentences, in keeping with the verdict and recommendation of the jury, will be run consecutive.

 The question of whether sentences should run consecutively or concurrently lies solely within the province of the trial court. *Brown v. State*, 326 Ark. 56, 931 S.W.2d 80 (1996). The appellant assumes a heavy burden of demonstrating that the trial judge failed to give due consideration to the exercise of his discretion in the matter of the consecutive sentences. *Id.* We will, however, remand for resentencing when it is apparent that the trial court did not exercise its discretion. *Durham v. State*, 320 Ark. 689, 899 S.W.2d 470 (1995); *Brown v. State*, 316 Ark. 724, 875 S.W.2d 828 (1994); *Wing v. State*, 286 Ark. 494, 696 S.W.2d 311 (1985).

Appellant relies on the holding in *Acklin v. State*, 270 Ark. 879, 606 S.W.2d 594 (1980), where this court remanded the case for resentencing based on the trial judge's comments indicating that it was the custom of the trial court to run multiple sentences consecutively. In that case, the trial judge stated in pertinent part:

> I am reminded of Judge J. Smith Henley in federal court, where the federal courts do all the sentencing, and all the guilt or innocence is determined by the jury. 'If you've got a legitimate defense, come over here and argue it. It won't cost you anything. But if you come over here and waste my time, the jury's time and the taxpayer's money, it may very well cost you something.'
>
> I'm not saying that's what I'm doing. *It's my customary rule to run consecutive sentences imposed by jurors,* not because it's an

> expense to the county and not because someone elects to do that; it's just my judgment in the matter that generally that's what the jury intends to do.

*Id.* at 881, 606 S.W.2d at 595 (emphasis added).

■ We do not agree with Appellant that the trial judge did not exercise any discretion in running Appellant's sentences consecutively. We view the trial judge's comments as being reflective of the sentence the jury had recommended, as opposed to the trial judge's comments in *Acklin*, which indicated that the trial judge always ran sentences consecutively without any consideration to the individual defendant. We are further persuaded that the trial judge in this case properly exercised his discretion in hearing and considering Appellant's objection to the consecutive sentences and then overruling the objection. Simply put, Appellant has failed to meet the heavy burden of demonstrating that the trial judge failed to use due discretion in sentencing him to consecutive prison terms.

Affirmed.

NEWBERN and THORNTON, JJ., dissent.

DAVID NEWBERN, Justice, dissenting. The separation of powers doctrine requires that this conviction be reversed and the case be remanded for resentencing. The Constitution of Arkansas provides, "No person, or collection of persons, being one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted." Ark. Const. art. 4, § 2. The statute which allows a jury to be instructed with respect to possibilities of parole permits the judiciary to impinge upon the executive parole function and is thus unconstitutional.

In *Scarber v. State*, 226 Ark. 503, 291 S.W.2d 241 (1955), jurors inquired of the Judge whether the defendant could "get out" if he were given a life sentence. The Judge responded that clemency is strictly an *executive function* not to be considered by them. We affirmed on the basis that the remark by the Judge was "complete and correct." Although we did not mention the Constitution in *Andrews v. State*, 251 Ark. 279, 472 S.W.2d 86 (1971),

our opinion, authored by Chief Justice Harris, offered a clear allusion to the separation of powers doctrine as follows:

> This [parole information] is certainly not a question, the answer to which must be known, before the members of the jury can discharge their duty. Their duty is to determine, within the limits of the statute, the punishment that should be meted out for the crime that has been committed, and such judgment should not be influenced by any event that might occur at some time in the future. The subject matter is entirely alien to a judicial proceeding *since it is handled entirely by another department of government, the executive.* [Emphasis supplied.]

We reaffirmed the *Andrews* decision in *Bush v. State,* 261 Ark. 577, 550 S.W.2d 175 (1977), a case decided after our Criminal Code of 1975 had come into effect. In the *Bush* decision, the issue became most serious in a capital murder case. The jurors were "hopelessly" deadlocked. The judge, at the instance of the parties, committed the mistake of speaking privately with the jurors and explaining, in response to a juror's question, the Governor's pardoning power. He reported that he told the jurors "that the legislature could not take away the governor's constitutional pardoning power." The jurors within five minutes thereafter returned a sentence of life without parole. Justice George Rose Smith wrote:

> The motion for a new trial should unquestionably have been granted. . . . That the discussion took place at all must be regarded as prejudicial error, for, despite some inconsistencies in our earlier opinions, we made it unmistakably plain in *Andrews v. State,* . . . that jurors are not concerned with the parole system and consequently should not be given even completely accurate information upon that subject. Here it is a reasonable inference that the jurors would not have returned their actual verdict had they not been given [the Judge's] explanation of the governor's pardoning power.

Courts of other jurisdictions in which sentences have been recommended or passed upon by juries have also disapproved making the parole or clemency possibilities a factor in sentencing. References to the separation of powers doctrine have been specific. In *Kemp v. State,* 632 P.2d 1239 (Okla. Cr. App. 1981), the

Oklahoma Court of Criminal Appeals approved the following language uttered by a trial judge upon being asked by jurors about the parole rules in that state:

> BY THE COURT: . . . The things you are asking in your question, I assure you if they were proper considerations, I would have instructed you about them. I have given you everything that is proper for you to consider. Let me just state a little bit further that our system of government divides the government into three separate functions.
>
> One is the executive, the other is the legislative, and the other is the judiciary. The question you are asking is proper for the executive branch of government, not the judiciary.
>
> All you need do is, in this stage of the proceedings, fix what you perceive to be a proper sentence. Let all other considerations remain to the executive later. Do what you think is right and forget about it, please. With that in mind, please retire again and let us know when you have a verdict.

In *Thompson v. State,* 47 S.E.2d 54 (Ga. 1948), jurors deliberating a capital murder sentence returned to the courtroom and asked about eligibility for parole in the event of a life sentence. The Judge replied that he did not know the current parole board rules, and he said further that the rules could change at any time, so it might be useless for the jurors to know them. From the opinion of the Georgia Supreme Court it appears that the Georgia law was that if the jurors returned a guilty verdict with a recommendation of mercy a life sentence might be imposed. Without such a recommendation the sentence would be death. When the question was asked, the jurors were divided on the sentence. After the question was answered, they agreed on a guilty verdict without a recommendation of mercy. In reversing the conviction, the Court wrote:

> Under our constitutional form of government, the legislative, judicial, and executive powers shall forever remain separate and distinct. Constitution, art. 1, sec. 1, par. 23. It is therefore improper for a judge in the trial of a person charged with murder to state or intimate what action could be taken in the future by a separate and distinct branch of the government in regard to the determination of whether or not a person sentenced to life

> imprisonment should be granted freedom and be permitted to come in contact with society. Where, as in this case a question is propounded by a juror that involves the functions of a separate and distinct branch of the government, the jury should be told that such matters can not be the subject of any instruction by the court. The instruction given was prejudicial and operated as an illegal influence against a recommendation for mercy by the jury, and a new trial must be granted.

Mr. Teague's argument obviously cannot be answered by a mere reference to Ark. Code Ann. § 16-97-103(1) (Supp. 1995). The statute, of course, may not provide a procedure that violates the Constitution.

In conclusion, it must be pointed out that the majority opinion uses the phrase "truth in sentencing" without explaining what it means. If it is suggested that a jury can, by being told of the parole and clemency possibilities, better predict how much time a defendant will spend in prison and tailor a sentence with those functions in mind, then the majority may be inspired by the phrase, but it is in fact badly misled. An attempt to reach a conclusion, based on such information, as to the time an inmate will be incarcerated is an exercise in speculation. As the majority would surely concede, one cannot predict how much "good time" a prisoner may earn any better than one can predict how a prisoner will behave in prison. One cannot predict how a parole board might react to the prisoner when parole consideration is appropriate. Nor can one predict the information the parole board might have before it when that time comes.

Our earlier cases got it right, both from the practical and the legal points of view. Now that we have, for the first time, an opportunity to resolve this question as a constitutional matter, we should recognize the obvious overlap of powers permitted by § 16-97-103(1) and hold it to be in violation of Ark. Const. art. 4, § 2.

I respectfully dissent.

THORNTON, J., joins in this dissent.