Cite as 2026 Ark. App. 329

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CR-25-749

| | | |
|---|---|---|
| JASON LAWSON | | |
| | APPELLANT | Opinion Delivered: May 20, 2026 |
| V. | | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72CR-24-1251] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE GARY ARNOLD, JUDGE |
| | | AFFIRMED; MOTION TO WITHDRAW GRANTED |

## STEPHANIE POTTER BARRETT, Judge

Jason Lawson ("Lawson") appeals his conviction from the Washington County Circuit Court following a three-day jury trial finding him guilty of first-degree murder, a Class Y felony, and tampering with physical evidence, a Class D felony. Lawson was sentenced to thirty-five years' imprisonment for first-degree murder and twelve years' imprisonment for tampering with physical evidence to be served consecutively in the Arkansas Division of Correction. Pursuant to *Anders v. California*, 386 U.S. 738 (1967), and Rule 4-3(b) of the Rules of the Supreme Court and Court of Appeals, Lawson's counsel has filed a no-merit brief and a motion to withdraw as Lawson's counsel asserting there is no issue of arguable merit to raise on appeal. The clerk of this court provided Lawson with a copy of his counsel's brief and notified him of his right to file a pro se statement of points

for reversal, which he has done. We affirm Lawson's conviction and grant counsel's motion to withdraw.

On June 27, 2024, Lawson was charged by felony information with one count of first-degree murder, a Class Y felony, in violation of Arkansas Code Annotated section 5-10-102(a)(2) (Supp. 2025) and one count of tampering with physical evidence, a Class D felony, in violation of Arkansas Code Annotated section 5-53-111(b)(1) (Repl. 2024). The felony information listed Benjamin Martin, Lawson's roommate, as the victim.

On August 29, 2025, Lawson filed a notice of intent to rely on the affirmative defense of self-defense. On September 2, 2025, the three-day jury trial began. During voir dire, the circuit court asked the prospective jurors if any of them were acquainted with the attorneys representing either party. Josie Mates, who ultimately became the jury's foreperson, stated she was married to a woman in the prosecutor's office and, through her wife, knew the prosecutors representing the State. She further stated she attended law school with Lawson's counsel. Mates confirmed her acquaintance with these attorneys would not affect her ability to fairly and impartially hear the evidence. Neither party objected to Mates sitting on the jury.

Following voir dire, the parties proceeded to opening statements. During the State's opening, the prosecutor provided a roadmap of the evidence the State intended to present to the jury. That evidence included the testimony of the officer who arrested Lawson. During the State's opening, the prosecutor stated the arresting officer came into contact with Lawson

while he was attempting to steal a car. No objection was made to this comment during the prosecutor's opening.

The State began its case-in-chief by calling Fayetteville Police Officer Keenan Robinson. Officer Robinson testified he was working in his capacity as a patrol officer on June 12, 2024, when he was dispatched to an apartment complex located at 261 North Lapis Lane for a welfare concern. Officer Robinson stated that the request for a welfare concern came from Matt Reardon, whom he made contact with at the apartment complex. Upon entering the apartment, Officer Robinson conducted a protective sweep and saw a deceased individual lying on the floor inside of the apartment. Officer Robinson testified the body smelled of gasoline. After discovering the body, Officer Robinson contacted the Criminal Investigation Division ("CID"), after which investigators arrived and assumed control of the scene. The next day, Officer Robinson was dispatched to Arkansas State Police Troop L in Lowell, Arkansas, where Lawson had been taken into custody following his arrest in Rogers, Arkansas. Officer Robinson testified he participated in a standard transfer of custody and personally transported Lawson to the Fayetteville Police Department.

Next, the State called Jennifer Reardon, Lawson's cousin. Jennifer testified she has known Lawson her entire life, and his mother, Shammie, is her aunt. Jennifer stated she speaks with Shammie at least once a month and often assists Shammie with her errands and grocery shopping. Jennifer recalled a time in June 2024 when Shammie came to her residence visibly upset and described events involving Lawson that had occurred over the last few days. Jennifer testified that following that conversation, she relayed this information to

3

other family members, including her husband, Matt Reardon, which ultimately led to the request for a welfare check.

Next, the State called Matt Reardon. Matt testified that Jennifer told him that Lawson might be in distress or that a serious situation may have occurred, which prompted him to make the welfare-concern call to the police. Matt stated he made contact with the police at The Cliffs apartment complex in Fayetteville, and his involvement ended there.

Next, the State called Deborah Green, a resident of the apartment directly across from Lawson's. Green testified she came into contact with officers in June 2024 because she had a visible Ring doorbell camera. Green stated she provided Ring footage to the police officers that showed activity in the common area outside the apartments during the early-morning hours of June 9, 2024. This footage was admitted into evidence and played for the jury.

Next, the State called Shammie Lawson, Lawson's mother. Shammie testified that during the relevant period, she was living with Lawson and Martin at The Cliffs apartment complex. She recalled that on the night of the stabbing, Lawson requested she sleep in his bedroom, which was not typical. She testified Lawson and Martin had been on the patio, and she could not hear them from Lawson's room. Not long after Shammie heard "grunting" noises," Lawson came into the room and told her they needed to leave the apartment. When Shammie entered the living room, she saw Martin lying on the floor, still breathing. She testified she was scared and afraid for her life and began cleaning the apartment when Lawson told her to do so. She stated Lawson did some cleaning, but at some point, he left the apartment and came back with a gas can. Lawson had moved Martin's body into the

4

kitchen, and that is where Lawson poured the gasoline on his body. She further testified Lawson threw his cigarette on Martin's body but picked it back up. She recalled Lawson stating, "I just killed my best friend." She testified she saw Lawson with a black pocketknife that night but had never seen him carry it before. She further recalled Lawson had a hammer in his hand, which he claimed Martin had tried to use against him. Shammie said she never saw Martin with a hammer. Shammie hid the hammer in the couch cushions because she was afraid Lawson would use it on her. Shammie stated after the murder, she and Lawson walked all over Fayetteville for a few days with her dog, who Lawson made her abandon at another apartment complex.

Next, the State called Michelle Hicks, Shammie's sister and Lawson's aunt. Hicks testified that Lawson lived with her for extended periods during his childhood, and she was heavily involved in his upbringing. Hicks stated Shammie had long-standing health issues that impacted her ability to live independently. She recalled that in June 2024, she received two messages from Lawson, stating, "Incinerator now," and "He murdered Superman." She stated that family members later alerted her to concerns involving Lawson.

Next, the State called Bobbye Oronoa, a crime-scene technician and digital forensics analyst for the Fayetteville Police Department. Oronoa testified she worked the scene of Martin's stabbing and documented it through photographs. Oronoa testified to her observations, including extensive blood pooling and blood evidence. In observing Martin's body, Oronoa testified, "There was nothing . . . consistent with a defensive wound." She recalled returning to the apartment on a later date during which she collected additional

5

evidence, including a hammer located inside a couch cushion and blood-contaminated carpet. Oronoa testified that she collected four cell phones during her involvement in the case. She stated she performed extractions on each phone and provided the results to Detective Jesus Magana.

Next, the State called Detective Magana with the Fayetteville Police Department. Detective Magana testified that on June 12, 2024, he was assigned to investigate a suspected homicide at The Cliffs apartments in Fayetteville. He recalled that when he arrived on the scene, patrol officers were already there, and he obtained the information that had been learned at that point. Detective Magana did not process the scene or make contact with civilians during his initial response to the scene. During Detective Magana's investigation, Cellebrite data extractions were performed on the cell phones collected by Oronoa. The results demonstrated that the user of one of the cell phones conducted a search on June 12, 2024, referencing "warrants" and the "Washington County Sheriff's Office" along with Lawson's name. Detective Magana testified that on June 12, he made contact with Lawson at the Arkansas State Police Troop L facility in Lowell after Lawson had been arrested by another law enforcement agency in Rogers. Detective Magana confirmed Lawson's identity during the encounter but did not transport him or interview him at that time.

The State later recalled Detective Magana to the stand, and he testified to his interview of Lawson. Detective Magana testified Lawson discussed his relationship with Martin, the events leading up to the incident at the apartment, and admitted stabbing Martin. However, according to Lawson, an argument ensued between the pair; Martin was

threatening to harm Lawson with a hammer; and Lawson acted in self-defense. Detective Magana recalled that Lawson told him he didn't turn himself in after the stabbing because he was afraid to go to jail since he was currently on probation. During cross-examination, Detective Magana stated the hammer recovered from Lawson's apartment was not submitted to the Arkansas State Crime Laboratory for testing, and that the murder weapon was never recovered.

Next, the State called Dr. Teddi Tubre, a forensic pathologist with the Arkansas State Crime Laboratory, to testify. Dr. Tubre performed Martin's autopsy and testified that he sustained a single sharp-force injury to the left side of his chest that penetrated his chest wall and entered his chest cavity. Dr. Tubre stated the injury was fatal and classified Martin's manner of death as homicide. However, she stated she could not identify the specific weapon used to cause the injury nor could she determine the amount of force used beyond stating that sufficient force was applied to cause this type of injury. Dr. Tubre also testified that Martin's clothing tested positive for gasoline. During cross-examination, Dr. Tubre further clarified she could not determine whether the stabbing occurred during a struggle, and she could not determine whether Martin was intoxicated at the time of his death.

Next, the State called Corporal Jesse Brusherd with the Rogers Police Department. Corporal Brusherd testified he was dispatched to investigate suspicious activity when he located Lawson, who matched the description he had been given. Lawson confirmed his identity and date of birth for Corporal Brusherd. After confirming Lawson's identity, Corporal Brusherd placed Lawson under arrest and transported him to the Arkansas State

7

Police Troop L facility for transfer to Fayetteville law enforcement. This concluded Corporal Brusherd's involvement in the case.

Once the State rested its case, Lawson moved for a directed verdict on both counts. He argued that as to first-degree murder, the State failed to make a prima facie showing that he acted with the purpose to cause the death of Martin. As for the tampering-with-evidence charge, he argued the State's proof was insufficient to establish that he purposely impaired the availability of evidence. The circuit court denied Lawson's motions.

The defense began its case-in-chief by calling Lawson to testify in his own defense. Lawson testified that during June 2024, he was living at The Cliffs apartments, and both Martin and Shammie were living in the apartment. He described Martin as his best friend but admitted the relationship with Martin was strained at times. He stated that on the morning of the incident, Martin became angry and aggressive during an argument the pair were having. Lawson stated Martin threated him with a hammer, and he was afraid Martin would strike him with it and believed he was in imminent danger. Lawson testified he retrieved a knife while Martin continued to advance toward him and that he stabbed Martin once in the chest. He stated he did not intend to kill Martin and that he was scared Martin was going to hurt him. Lawson testified he "panicked" after Martin fell to the ground, and he did not know what to do. He admitted he did not call 911 and that he left the apartment and traveled to various locations over the next several days.

At the conclusion of Lawson's testimony, the defense rested its case and renewed its motions for directed verdict, which were denied by the circuit court. After deliberations, the

8

jury returned verdicts finding Lawson guilty of first-degree murder and tampering with physical evidence. Following a sentencing phase, the jury recommended thirty-five years' imprisonment for murder and twelve years' imprisonment for tampering with physical evidence. The jury recommended, and the court ordered, that the sentences run consecutively, for an aggregative of forty-seven years' imprisonment.

Counsel has complied with the requirements of *Anders* and Rule 4-3(b)(1) and states there is no meritorious ground for reversal. Counsel has briefed six adverse rulings, each of which is addressed below.

Although it is not the first adverse ruling addressed by Lawson's counsel, we address the sufficiency of the evidence first because if the judgment of conviction is not supported by substantial evidence, an appellant may not be tried again under the principle of double jeopardy. *Ramaker v. State*, 345 Ark. 225, 46 S.W.3d 519 (2001). We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Armstrong v. State*, 2020 Ark. 309, 607 S.W.3d 491. In reviewing a sufficiency challenge, we assess the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id.* We will affirm a judgment of conviction if substantial evidence exists to support it. *Id.* Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.* The credibility of witnesses is an issue for the jury, not the court; the trier of fact is free to believe all or part of any witness's testimony and may resolve questions of

conflicting testimony and inconsistent evidence. *Burns v. State*, 2023 Ark. App. 309, 668 S.W.3d 566.

First-degree murder, defined in Arkansas Code Annotated section 5-10-102(a)(2), provides that a person commits murder in the first degree if, with a purpose of causing the death of another person, the person causes the death of another person. A person acts purposely with respect to his or her conduct or a result or his or her conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result. Ark. Code Ann. § 5-2-202(a) (Repl. 2024). A criminal defendant's intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the crimes. *Green v. State*, 2018 Ark. App. 145, 544 S.W.3d 574. Our supreme court has recognized that the intent necessary for first-degree murder may be inferred from the type of weapon used, the manner of its use, and the nature, extent, and location of the wounds. *Id.*

The State presented ample evidence to support Lawson's first-degree-murder conviction. The medical examiner, Dr. Tubre, testified Martin died from a fatal stab wound to his heart. She testified that considering the position Martin was stabbed from, a large amount of force would have been necessary to penetrate his bone and reach his heart. She further testified that Martin's clothing tested positive for gasoline residue. This line of testimony further supported the testimony provided by Lawson's mother, Shammie, who testified that Lawson covered Martin's body in gasoline. Shammie further testified that when she entered the room, Martin was still breathing. Despite this, Lawson covered his body with

a sheet and began cleaning the apartment, eventually fleeing the scene and disposing of the murder weapon. Considering the evidence as a whole, there is no meritorious argument for reversal of Lawson's first-degree-murder conviction.

As for the tampering charge, a person commits the act of tampering with physical evidence if he alters, destroys, suppresses, removes, or conceals any record, document, or thing with the purpose of impairing its verity, legibility, or availability in an official proceeding or investigation. Ark. Code Ann. § 5-53-111(a). Tampering with physical evidence is a Class D felony if the person impairs or obstructs the prosecution or defense of a felony. Ark. Code Ann. § 5-53-111(b)(1).

Testimony demonstrated that following the stabbing, Lawson moved Martin's body, poured gasoline on his body, and disposed of the murder weapon, which was never recovered. Each of these acts alone would be sufficient for a tampering charge. Taken together, it certainly shows there is no meritorious challenge to the sufficiency of the evidence supporting this conviction.

The next adverse ruling addressed by Lawson's counsel concerns the introduction of photographic evidence at trial. We have held the admission of photographs is a matter left to the circuit court's sound discretion, and we will not reverse absent an abuse of that discretion. *Airsman v. State*, 2014 Ark. 500, 451 S.W.3d 565. When photographs are helpful to explain testimony, they are ordinarily admissible. *Id.* The mere fact that a photograph is inflammatory or cumulative is not, standing alone, sufficient reason to exclude it. *Breeden v. State*, 2013 Ark. 145, 427 S.W.3d 5. Even when the cause of death is undisputed, a defendant

may not prevent the admission of photographs merely by conceding the facts portrayed therein. *E.g.*, *Smart*, 352 Ark. 522, 104 S.W.3d 386.

Here, Lawson's counsel filed a motion in limine seeking to prohibit the State from introducing autopsy photographs of the victim's body. Specifically, the defense argued that because they had stipulated to the medical examiner's findings, the images lacked probative value and should be excluded. However, this argument is contrary to Arkansas case law. Our supreme court has stated,

> [P]hotographs illustrating the victims' manner of death are central to the State's murder prosecution, adding weight to the crime and eliminating adverse inferences. Generally, the State is entitled to prove its case by evidence of its own choice, and a defendant may not stipulate or admit his way out of the full evidentiary force of the case as the State chooses to present it.

*Collins v. State*, 2020 Ark. 371, at 7, 610 S.W.3d 653, 657 (citing to *Old Chief v. United States*, 519 U.S. 172 (1997)). Further, the images were used to aid in the testimony of the medical examiner, which helped the jury understand the nature and degree of the injury Martin sustained, and corroborated witness testimony. The circuit court found the photographs served a valid purpose and that the probative value outweighed any unfair prejudice. Given the discretion afforded the State in presenting its case and to the circuit court in the admission of evidence, we cannot say the circuit court abused its discretion by admitting the autopsy photographs for these purposes.

The next adverse ruling addressed by counsel ties into the previous adverse ruling. The defense requested that if the photographs were to be admitted, they should be admitted in black and white rather than color. Whether the pictures were admitted in color or black

and white does not change the analysis the circuit court would have to apply. We adopt the same reasoning here and affirm.

The next adverse ruling addressed by counsel concerns a defense objection to testimony regarding the absence of defensive wounds on Martin's body. Arkansas Rules of Evidence 701 and 702 govern opinion testimony. Lay witnesses may provide opinion testimony when the opinion is "rationally based on the perception of the witness; and the opinion is helpful to a clear understanding of his [or her] testimony or the determination of a fact in issue." Ark. R. Evid 701. Expert witnesses may provide opinion testimony "if scientific, technical, or specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Ark. R. Evid. 702.

Here, the circuit court allowed the crime-scene technician and digital forensic analyst, Bobbye Oronoa, to testify about her observations of Martin's body—including whether she noted any injuries to Martin consistent with defensive wounds. A circuit court has broad discretion when making evidentiary rulings, and this court will not reverse the circuit court's ruling absent an abuse of that discretion. *Humphry v. State*, 2023 Ark. 16, at 5, 659 S.W.3d 691, 695. Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Id.* During trial, counsel for Lawson argued this line of questioning called for opinion testimony requiring medical or forensic expertise that Oronoa was not qualified to give. However, our courts have consistently ruled that an officer's opinion testimony based on his or her work experience and observations is admissible. *E.g.,*

13

*Flowers v. State*, 373 Ark. 127, 132, 282 S.W.3d 767, 771 (2008) (testimony of an officer that a truck's window had been broken on the outside did not require expert testimony because the officer's testimony was rationally based on his experience, forensic training, and personal observation); *Robinson v. State*, 353 Ark. 372, 383, 108 S.W.3d 622, 629 (2003) (opinion testimony by an investigator on the amount of blood lost by a victim was rationally based on perception and was admissible); *Gruzen v. State*, 276 Ark. 149, 155, 634 S.W.2d 92, 95 (1982) (opinion testimony by an officer on how long a person had been dead was admissible because it was based on the officer's experience and observations).

Oronoa testified "there was nothing . . . consistent with a defensive wound." Lawson had the chance to cross-examine Oronoa, and the jury was presented with Oronoa's credentials. Our courts have been clear that the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Brooks v. State*, 2016 Ark. 305, at 7, 498 S.W.3d 292, 296. The jury was free to determine how much weight to give to Oronoa's testimony. *Id.* Under these standards, we cannot say the circuit court abused its discretion. Therefore, counsel for Lawson is correct that there is no meritorious argument for reversal on the basis of this adverse ruling.

The next adverse ruling, the admission of autopsy photographs during the medical examiner's testimony, directly ties into the analysis provided above in adverse rulings 2 and 3. As mentioned above, our courts have repeatedly stated that when photographs are helpful to explain testimony, they are ordinarily admissible. *Smart*, 352 Ark. 522, 104 S.W.3d 386. Although at trial Lawson argued the admission of the photographs would be cumulative, the

14

mere fact that a photograph is inflammatory or cumulative is not, standing alone, sufficient evidence to exclude it. *Smart, supra.* Even the most gruesome photographs may be admissible if they assist the trier of fact by shedding light on some issue, providing a necessary element of the case, enabling a witness to testify more effectively, corroborating testimony, or enabling jurors to better under the testimony. *Id.* With these standards in mind, coupled with the standards and analysis set forth in adverse rulings 2 and 3, we cannot say the circuit court abused its discretion in making this adverse ruling.

The final adverse ruling addressed by Lawson's counsel concerns the circuit court's order that his sentences run consecutively. The question of whether sentences should run consecutively or concurrently lies within the sole province of the circuit court. *Teague v. State*, 328 Ark. 724, 946 S.W.2d 670 (1997). The appellant assumes a heavy burden of demonstrating that the circuit court failed to give due consideration to the exercise of its discretion in the matter of consecutive sentences. *Id.* We will remand for resentencing when it is apparent the circuit court did not exercise its discretion. *Id.*

Here, it was within the circuit court's discretion to decide whether Lawson's sentences should run consecutively or concurrently. The record demonstrates that the circuit court instructed the jury that if it recommended Lawson's sentences run concurrently, that recommendation was not binding on the court. Further, the record shows the circuit court chose to adopt the jury's recommendation of consecutive sentences, and it is evident the court exercised its discretion in that regard because it stated on the record that it was the court's intention for Lawson's sentences to run consecutively. Additionally, to further

support the circuit court's decision, each sentence Lawson received was within the statutory range for the class of felony charged. Because the circuit court exercised its discretion, there could be no meritorious argument with respect to its sentencing decision. *See Teague, supra.*

Next, we turn to appellant's pro se points. Lawson first argues the evidence supporting his first-degree-murder conviction is insufficient because it does not disprove his self-defense claim. He further argues his actions following the stabbing were a result of some type of temporary insanity and therefore should not be considered in determining his guilt for a tampering-with-evidence conviction. However, Lawson's directed-verdict motion did not make these challenges but instead was a general motion regarding the State's failure to make a prima facie case, which does not satisfy the requirements of Arkansas Rule of Criminal Procedure 33.1.

Rule 33.1(a) provides that "[i]n a jury trial, if a motion for directed verdict is to be made, it shall be made at the close of the evidence offered by the prosecution and at the close of all of the evidence. A motion for directed verdict shall state the specific grounds therefor." Subsection (c) of the same rule provides that

> [t]he failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required in subsection[] (a) . . . above will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment. A motion for directed verdict or for dismissal based on insufficiency of the evidence must specify the respect in which the evidence is deficient. A motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense.

It is well settled that Rule 33.1 is strictly construed. *Richardson v. State*, 2020 Ark. App. 25, 595 S.W.3d 1. A general motion does not satisfy the requirements of specificity

mandated in Rule 33.1. *Daniels v. State*, 2018 Ark. App. 334, 551 S.W.3d 428. The reason underlying this rule is that when specific grounds are stated and the proof is pinpointed, the circuit court can either grant the motion or allow the State to reopen its case and supply the missing proof. *Scott v. State*, 2015 Ark. App. 504, 471 S.W.3d 236. Our courts have been steadfast in holding that we will not address the merits of an appellant's insufficiency argument when the directed-verdict motion is not specific. *Daniels, supra.* Further, a party cannot enlarge or change the grounds for an objection or motion on appeal but is bound by the scope and nature of the arguments made at trial. *Burns v. State*, 2023 Ark. App. 309, 668 S.W.3d 566. Therefore, Lawson's argument is not preserved for appellate review.

Lawson next argues that because the judge who ultimately presided over his case had not been involved from the beginning, his trial was unfair. A review of the record shows that an objection to a substitute judge was never made. This argument is not preserved for appellate review because it is being made for the first time on appeal. This court will not address arguments made for the first time on appeal; a party is bound by the scope and nature of the arguments made at trial. *Lewis v. State*, 2017 Ark. App. 442, 528 S.W.3d 312. Even if this argument were preserved, a review of our caselaw demonstrates that generally a substitute judge is not grounds for reversal absent a showing of actual prejudice or procedural error. *See Woods v. State*, 278 Ark. 271, 644 S.W.2d 937 (1983). There is no indication in this record of actual prejudice or that procedural error took place.

Next, Lawson argues that juror Josie Mates should not have been allowed to sit on the jury. Specifically, he notes that Mates is married to a prosecutor and was familiar with

the prosecutors trying his case. Once again, this argument is not preserved for appellate review because it is being made for the first time on appeal. This court will not address arguments made for the first time on appeal; a party is bound by the scope and nature of the arguments made at trial. *Lewis, supra.* Even if Lawson's argument were preserved, it would still be without merit. The juror also stated she attended law school with defense counsel and would not feel obligated to explain her position to either party after reviewing all the evidence. There is no substance to Lawson's argument that could be interpreted as a meritorious ineffective-assistance-of-counsel claim.

Next, Lawson argues the prosecutor made a "false and unsubstantiated claim" that he was arrested for attempting to steal a car in Rogers, Arkansas. He argues this statement added an "untrue circumstance" for the jury to consider, defamed his character, and created undue prejudice against him. Again, this argument is not preserved for appellate review because it is being made for the first time on appeal. Our court will not address arguments made for the first time on appeal; a party is bound by the scope and nature of the arguments made at trial. *Lewis,* 2017 Ark. App. 442, 528 S.W.3d 312.

Next, Lawson argues the circuit court erred when it overruled his objection to the admission of autopsy photographs during the medical examiner's testimony. This issue has been addressed in the previous section regarding adverse rulings briefed by Lawson's counsel. We adopt that same analysis here.

Finally, Lawson argues that during closing arguments, the prosecutor made an unsubstantiated claim that the manner in which Martin was stabbed differed from Lawson's

testimony. Again, this argument is not preserved for appellate review because it is being made for the first time on appeal. This court will not address arguments made for the first time on appeal; a party is bound by the scope and nature of the arguments made at trial. *Lewis*, *supra*. Even if this argument were preserved, it is without merit. In reviewing the prosecutor's closing arguments, the State did not mention anything specific about Martin's stabbing. The State simply provided its version of events, and Lawson doesn't like that version. The jury is free to believe or disbelieve whomever they want.

We conclude there has been compliance with Rule 4-3(b) and that this appeal is without merit. Accordingly, counsel's motion to be relieved is granted, and Lawson's conviction is affirmed.

Affirmed; motion to withdraw granted.

HARRISON and HIXSON, JJ., agree.

*Mothershed Law, PLLC*, by: *La'Donnia M. Mothershed*, for appellant.

*Tim Griffin*, Att'y Gen., by: *James Hill*, Ass't Att'y Gen., for appellee.