Cite as 2026 Ark. App. 322

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CR–25–644

|  |  |
|---|---|
| BRYAN TANKSLEY<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered** May 20, 2026<br><br>APPEAL FROM THE ASHLEY COUNTY CIRCUIT COURT [NO. 02CR-24-58]<br><br>HONORABLE ROBERT B. GIBSON III, JUDGE<br><br>AFFIRMED; MOTION TO WITHDRAW GRANTED |

## BRANDON J. HARRISON, Judge

Bryan Tanksley appeals his convictions for possession of a controlled substance and possession of drug paraphernalia. Tanksley's attorney has filed a no-merit brief and a motion to withdraw as counsel pursuant to Ark. Sup. Ct. R. 4-3(b)(1) (2025) and *Anders v. California*, 386 U.S. 738 (1967), asserting that the appeal is wholly without merit. The clerk of this court mailed a copy of counsel's motion and brief to Tanksley's last-known address informing him of his right to file pro se points for reversal, but he has not done so. We affirm the convictions and grant the motion to withdraw.

In a criminal information filed 22 March 2024, the State charged Tanksley as a habitual offender with possession of a controlled substance (morphine) and possession of drug paraphernalia, both Class D felonies. (02CR-24-58) On 23 April 2024, the court released him from the custody of the Ashley County Detention Center so he could begin

substance-abuse treatment at Covenant Recovery, Inc. On 18 June 2025, Tanksley pled guilty to both charges but had his sentence decided by a jury.

During jury selection, defense counsel objected because three of the four jurors struck by the State were African American. The State responded that the jurors had been struck because they attended church with Daniel Shelton, a peer-support specialist who referred Tanksley to Covenant Recovery and who was an expected witness for the defense. The court overruled the objection and stated, "[I]t would be almost malpractice if they were not struck by the State given Mr. Shelton's stature in the community and that they go to church together."

Tim Sivils, a parole officer for the Arkansas Department of Correction, testified that he and two police officers conducted a home visit on Tanksley on 14 March 2024. Tanksley had been released on parole on or about 2 January 2024, and he was told to report to the Crossett probation and parole office on January 8. At that appointment, Tanksley tested positive for methamphetamine and amphetamines. His parole officer scheduled a substance-abuse assessment for Tanksley on January 13, but he failed to appear. He also failed to report to his next office visit on February 13. He later reported on February 26, received a verbal warning for failure to report, and was assigned another appointment for a substance-abuse assessment on March 8. However, he failed to report to that assessment.

Sivils also testified that controlled substances have had a "devastating" effect on Ashley County and that he had seen things worse than what he had witnessed when deployed in Iraq. After describing several examples, defense counsel objected on relevance grounds; the court overruled the objection, noting that the testimony was "specifically

relevant as to what the issue is and how it impacts, not only the community, but the individuals involved. . . . And how it impacts the community is something that the jury is entitled to consider."

Josh Pollock, an investigator with the Ashley County Sheriff's Department, testified that he participated in the Tanksley home visit on 14 March 2024. Tanksley identified his bedroom, and Pollock found a small vial of morphine in a drawer. He also found two glass pipes commonly used for smoking methamphetamine under Tanksley's mattress. On cross-examination, Pollock agreed that Tanksley was cooperative.

Jeremy McKenzie, the executive director of Covenant Recovery, testified that Tanksley had been in their program for drug-and-alcohol treatment for approximately fourteen months. He said Tanksley had done a "very good job" and had been compliant since he began treatment. With the program's help, Tanksley had obtained employment through a temporary agency and later transferred to Tyson Chicken, where he is currently employed. Tanksley also lives in housing provided by Covenant Recovery and is in the final phase of the program, which is "long-term, chem-free living." He purchases some of his own food and is allowed to have a vehicle on campus, to have a cell phone, and to leave campus on the weekends. McKenzie explained that their program focuses on responsibility and accountability and that the residents help keep each other accountable. He also said that the program conducts random drug tests and that Tanksley has always tested negative.

Tanksley testified and agreed that within a week of being released from prison in January 2024, he tested positive for methamphetamine. He said that he missed appointments during that time because he was an "active drug addict." He confirmed that he had been

arrested on 14 March 2024 and that he began treatment at Covenant Recovery a month later. He said he had not used drugs since March 2024. On cross-examination, he disagreed that he went to treatment because he was facing substantial prison time and said that his main incentive was to "quit going to prison."

Daniel Shelton testified that his job as a peer-support specialist is to "advocate for treatment for anybody that goes to jail, comes in the courthouse, and anybody in the community." Tanksley asked to meet him while he was visiting the jail and asked for help. Shelton helped Tanksley get accepted into Covenant Recovery and visited him several times. Shelton said that Tanksley was doing well and "making good decisions."

After the jury retired to deliberate, the State requested that Tanksley be drug tested, and the defense did not object. The jury returned with a recommendation of twelve years' imprisonment for possession of a controlled substance and six years' imprisonment for possession of drug paraphernalia. The jury also recommended that the sentences run consecutively.

The court announced that it would accept the consecutive-sentence recommendation because "at the break you were tested. You were given an alcohol test and a drug test, and you failed both. And you blew in a Breathalyzer back there and you blew .02." The court sentenced Tanksley to eighteen years' imprisonment, and he timely appealed.

Rule 4–3(b)(1) requires that the argument section of a no-merit brief contain "a list of all rulings adverse to the defendant made by the circuit court on all objections, motions and requests . . . with an explanation as to why each . . . is not a meritorious ground for

reversal." The test is not whether counsel thinks the circuit court committed no reversible error but whether the points to be raised on appeal would be wholly frivolous. *T.S. v. State*, 2017 Ark. App. 578, 534 S.W.3d 160. Pursuant to *Anders*, we are required to determine whether the case is wholly frivolous after a full examination of all the proceedings. *Id*.

Appellate counsel first argues that the circuit court was correct in its imposition of sentence. According to the criminal information, Tanksley's possible sentence was fifteen years on count one and six years on count two. The jury recommended sentences of twelve years on count one and six years on count two and recommended that the sentences run consecutively. It is the circuit court's function to impose a sentence and its obligation to exercise its discretion in the imposition of that sentence. *Brown v. State*, 82 Ark. App. 61, 110 S.W.3d 293 (2003). This standard of review is a high threshold, and it requires that a circuit court not act improvidently, thoughtlessly, or without due consideration. *Hoodenpyle v. State*, 2013 Ark. App. 375, 428 S.W.3d 547. In addition, the question of whether sentences should run consecutively or concurrently lies within the sole province of the circuit court. *Teague v. State*, 328 Ark. 724, 946 S.W.2d 670 (1997). Counsel concludes that the circuit court did not abuse its discretion in sentencing Tanksley within the statutory guidelines and according to the jury's verdict and recommendation.

Counsel next addresses the *Batson* challenge made by Tanksley during jury selection for sentencing. Counsel explains that the State gave a race-neutral reason for the strikes, namely that the stricken jurors attended church with defense witness Daniel Shelton, and defense counsel stated, "Okay. All right, I just needed to make a record." The circuit court

overruled the objection and also commented that the strikes were appropriate "given Mr. Shelton's stature in the community and that they go to church together." Counsel explains that it is "the responsibility of the party opposing the strike to move the matter forward. . . . [I]f the party opposing the strike does not present more evidence, no additional inquiry by the [circuit] court is required." *Weston v. State*, 366 Ark. 265, 275, 234 S.W.3d 848, 856 (2006) (quoting *Owens v. State*, 363 Ark. 413, 417, 214 S.W.3d 849, 852 (2005)). Here, defense counsel never proceeded beyond the initial step of requesting race-neutral reasons for the strikes. Once this was given by the State, no further discussion ensued. Therefore, counsel asserts, the circuit court did not err in overruling the *Batson* challenge.

Next, counsel discusses the circuit court's decision to allow Sivils to testify concerning the effects of drugs in Ashley County. Counsel contends that this court addressed this issue in *Fowler v. State*, 2024 Ark. App. 63, 684 S.W.3d 271. In *Fowler*, the appellant argued that the circuit court erred in allowing an officer to testify during the sentencing phase about the harm caused to the community by drug dealers. This court noted that the list of relevant evidence in Ark. Code Ann. § 16-97-103 is not an exhaustive list, and the circuit court is not obligated to limit evidence during the sentencing phase to only those categories listed in the statute. The *Fowler* court also explained that the appellate court reviews a circuit court's decision to admit evidence in the sentencing phase for an abuse of discretion, and we will reverse a sentencing decision only if the defendant can show prejudice by the erroneously admitted evidence. *See Gillean v. State*, 2015 Ark. App. 698, 478 S.W.3d 255. The *Fowler* opinion held, "Because Fowler was not sentenced to the maximum allowable, he cannot establish prejudice from the admission of Commander

6

Elliot's testimony during sentencing. Therefore, we do not reach the merits of his sentencing-hearing argument." *Fowler*, 2024 Ark. App. at 14, 684 S.W.3d at 279. Counsel asserts that Tanksley was not sentenced to the maximum sentence possible, as he was sentenced to twelve years on count one and not fifteen years, so he likewise cannot establish prejudice.

Finally, counsel asserts that the circuit court's consideration of the results of a portable breath test before imposing Tanksley's sentence was harmless. Counsel explains that the testing was done outside the presence of the jury, and the circuit court followed the jury's recommendation and did not enhance the sentence. Again, counsel cites the circuit court's discretion in the imposition of sentence and contends there was no abuse of discretion here.

From our review of the record and the brief presented, we hold that any appeal would be wholly without merit. Accordingly, appellate counsel's motion to withdraw is granted, and Tanksley's convictions are affirmed.

Affirmed; motion to withdraw granted.

BARRETT and HIXSON, JJ., agree.

*Denise D. McMillan*, for appellant.

One brief only.

7